ANNIE NYEGOMIR, ADMINISTRATRIX, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

FILED FEBRUARY 7, 1936.  No. 29523.

*B. J. Boyle, J. J. Krajicek* and *Johnsen, Gross & Crawford,* for appellant.

*G. C. Holdrege, T. F. Hamer* and *T. W. Bockes, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

CARTER, J.

This is an action brought by the plaintiff as administratrix of the estate of Michael Nyegomir, deceased, against the Union Pacific Railroad Company, Lorenzo W. Litton and Frank Foley to recover damages for the alleged wrongful death of her husband, Michael Nyegomir. The trial court sustained the motion of the defendants for a directed verdict and dismissed plaintiff's action. From the overruling of her motion for a new trial, plaintiff brings the case to this court on appeal.

The record shows that the railroad of the Union Pacific Railroad Company, in the vicinity where the accident occurred, ran north and south parallel to Twenty-fourth street in the city of Omaha. Its tracks cross Washington street, a public thoroughfare, at which intersection the railroad company provides a watchman who, at the time of the accident, was the defendant Foley. It is also shown by the record that it had been the custom of packing-house employees and others to walk upon the railroad tracks and the pathways between the tracks in going to and from work. The watchman, Foley, had knowledge of the fact

that the right of way of the railroad company was so used and that the deceased, Michael Nyegomir, had used the right of way of the railroad company for such purpose.

On the evening of October 18, 1933, the deceased, Michael Nyegomir, came down the tracks from the north, crossed Washington street and proceeded south on the right of way of the railroad company, following a path immediately west of the main track for southbound trains. The evidence is undisputed that Nyegomir was intoxicated to such a degree that he staggered noticeably, which state of intoxication was observed by the watchman Foley and one Wilford Segrade, a 16-year-old high school boy who was with Foley at the time. The evidence of young Segrade is to the effect that he and Foley watched Nyegomir stagger south on the path west of the main track, saw him fall once and, apparently with considerable effort, rise to his feet and proceed into the shadow of some coalbins that parallel the tracks for some distance at that point. The evidence of Segrade also shows that Foley stated that a freight train was expected at any time, as it was then past due. Segrade testifies that he told Foley that he had not seen Nyegomir come out of the shadow of the coalbins and that Foley stated that he was probably lying down in the weeds. Segrade says that he walked down toward the coalbins to a place where he could see along the tracks and that Nyegomir was not on the tracks at that time. This fact he reported to Foley and suggested that they both go down and look for Nyegomir. Foley stated that his duties required his presence at the crossing and that he could not leave. The record shows that the train came along within a few minutes, whistled at the crossings north of Washington street and also on its approach to Washington street. When the engine of the train was within 15 or 20 feet of the Washington street crossing, Nyegomir was first seen by Segrade about 150 feet south of the crossing with both legs over the west rail of the track. At the same time that Segrade noticed Nyegomir on the tracks, the engineer Litton, one of the defendants, applied his brakes and attempted to stop the

on

train but was unable to do so, with the result that Nyegomir was run over and injured to such an extent that he died the next day. The evidence was that the train was composed of about 60 cars and was traveling approximately 40 miles an hour. The plaintiff contends that this evidence is sufficient to show such negligence on the part of the defendants as to require a submission of the case to a jury.

It is clear from an examination of this evidence that there is no negligence shown in the operation of the train unless its speed could be so considered. There is no evidence, however, that the speed of the train was a material factor in causing the injury complained of. We fail to find sufficient evidence of negligence on the part of the watchman, Foley, to sustain a judgment. All of the information that he had prior to the accident was that the tracks were clear. He remained at his post to guard against injury to persons crossing the railroad tracks on Washington street. The watchman could hardly be expected to abandon his station at the railroad crossing at a time when a train was expected in order to investigate the mere possibility that a person might be in a place of danger elsewhere. It would appear therefore that, unless the last clear chance doctrine applies, there can be no liability on the appellees.

In order for the plaintiff to prove liability under this doctrine, it is incumbent upon her to prove by competent evidence that just before the accident the deceased was in a position of peril; that the railroad company or its agents knew or by the exercise of ordinary care ought to have known of his peril; that defendant, after receiving such knowledge, had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; that defendant failed to exercise ordinary care to avert the impending injury, and that deceased was injured as a result thereof. *Banks v. Morris & Co.*, 302 Mo. 254, 257 S. W. 482. It will be noted in the case at bar that there is no evidence in the record showing when the deceased became imperiled. He was first seen on the track 150 feet south of the Washington street crossing when the

engine was within 15 or 20 feet north of the crossing. The engineer applied his brakes and attempted to stop at that time. There is no evidence that the train could have been stopped in time to have avoided the injury. There is no evidence that the deceased was on the track and in a position of peril at a time when the engineer in the exercise of ordinary care could have stopped his train and avoided the injury. A recovery cannot be had on probabilities arising from a given situation. In *Zitnik v. Union P. R. Co.*, 91 Neb. 679, 136 N. W. 995, the court said: "These are only conjectures, and the evidence fails to prove that the deceased was on the tracks in a dangerous situation for such a length of time that he could have been seen by the fireman looking from the cab window. It is not the 'probabilities' that are to be established by a preponderance of the evidence; the fact itself must be so established." See, also, *Lucas v. Omaha & C. B. Street R. Co.*, 104 Neb. 432, 177 N. W. 786; *Wilson v. Union P. R. Co.*, 107 Neb. 111, 185 N. W. 406; *Patterson v. Kerr*, 127 Neb. 73, 254 N. W. 704. We conclude that plaintiff failed to prove facts sufficient for the application of the last clear chance doctrine. We are obliged to hold that the deceased elected to walk along or on the railroad company's tracks and met his untimely death because of his own carelessness and negligence. As was stated by this court in *Eggeling v. Chicago, R. I. & P. R. Co.*, 119 Neb. 229, 228 N. W. 361: "He may not, in reckless disregard of any possible negligence of the railroad, rely solely upon its statutory duty, proceed to a place of danger, and expect the train, which cannot turn out or stop instantly, to be an insurer of his safety. If he does nothing for his own security he is negligent, and if the physical facts leave no doubt so that reasonable minds would not differ in that he either proceeded recklessly or failed without reasonable excuse to take the precautions which the conditions indicate were available to him, he is as a matter of law guilty of negligence more than slight, which under our rule of comparative negligence bars a recovery." This has particular application to the case at bar. The contributory negligence

of the deceased was more than slight as a matter of law and, under our comparative negligence rule, a recovery cannot be had. The trial court was right in directing a verdict for the defendants.

AFFIRMED.