HENRY MUNDT, APPELLANT, V. CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY ET AL., APPELLEES.

286 N. W. 691

FILED JUNE 27, 1939. No. 30511.

*Ziegler, Dunn & Becker, D. L. Manoli* and *William R. Patrick,* for appellant.

*Chambers, Holland & Locke* and *Ralph J. Nickerson,* contra.

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is an action to recover damages for personal injuries caused by a collision of plaintiff's automobile and a train at a railroad crossing. The trial court sustained a motion of defendants for a directed verdict. Plaintiff appeals.

In reviewing this record, we have regarded as established

every issuable fact which the evidence in favor of the plaintiff proves or tends to prove. *Petersen v. Ohio Casualty Ins. Co.*, 131 Neb. 128, 267 N. W. 393.

The accident occurred in the late afternoon of July 23, 1936. On that date, the weather was clear; the sun was shining; and what wind there was, was blowing from the northwest.

Plaintiff was driving south on a north and south graveled highway. The railroad track at the point of the accident runs generally east and west, swinging from the southwest in a gradual course, and crosses the highway at slightly less than a right angle.

The highway at about 600 feet north comes over a hill, and about half way down, as it goes south, passes through a cut and slopes downhill. A few rods from the railroad track, it levels out and runs level from that point to the track. There was a corn-field to the west of the highway and down to the railroad 50 feet north of the tracks. The weeds had been cut along the highway. They were growing at considerable height on the right of way.

The plaintiff, who was a county commissioner, had lived in that neighborhood and had been familiar with that crossing practically since the railroad was built. He had crossed the track at that point for weeks before the accident, and knew the physical facts there existing. Plaintiff knew that freight and passenger trains, regular and extra, passed that crossing at various hours of the day, and knew that they might do so at any time. When at his home over a mile away, he often heard the whistle of the trains.

Plaintiff had driven cars for 25 years. His sight and hearing were good. On the day of the accident, he was driving a standard-make car, which was in good condition, making no unusual noises, and the car windows were open. He was driving 25 to 30 miles an hour as he came down the hill. As he approached the track, he reduced his speed to 20 miles an hour and could have stopped his car within 15 or 20 feet at that time. As he came through the cut, his vision of the track to the west was obstructed, but at

a point 75 to 100 feet north of the crossing, he could have seen a train 100 feet west of the crossing. Beginning at a point 75 feet north of the crossing, there was nothing "to amount to anything" to obscure his vision, and at 50 feet north of the track, he could have seen a train 1,000 feet west.

Plaintiff had the obstructions to his vision in mind as he approached the crossing. He testified that he looked and listened all the way down the hill and saw and heard nothing. He testified, "I looked mostly towards the west until I got within about, I don't know, thirty or forty feet of the track and then I must of turned my head and looked to the east." At another place in the testimony, plaintiff says he looked east when he was 30 to 50 feet from the track.

The train was a freight train consisting of six cars, caboose, engine and tender. Its speed was about 30 miles an hour. The regular crossing whistle of two long and two short blasts was blown beginning a quarter of a mile west of the crossing. Plaintiff's witness says that he saw the steam from the last whistle about 500 feet west of the crossing. Plaintiff's witness says that at that time the plaintiff's car was about 500 feet north of the crossing, and if it was, then plaintiff had not yet entered the cut on the highway. While the record as to that is not definite, it may be properly inferred that plaintiff, had he been looking, could at that time have seen the train or at least could have seen the escaping steam from the whistle. Plaintiff's witness saw both the plaintiff's car and the train for several hundred feet before the accident, and testified that they were about the same distance from the crossing and were approaching at about the same rate of speed.

Defendants' witnesses testify that the fireman, who was sitting on the left side of the engine cab, first saw the plaintiff when he was about 70 feet from the crossing. The engineer was on the right side of the cab and could not see the plaintiff. The fireman called to the engineer to stop, and the air and emergency brakes were applied immediately. The engine hit the rear right side of plaintiff's car.

The train was stopped a few car-lengths beyond the crossing.

That plaintiff was seriously injured is not disputed. The question presented is that of the liability of the defendants. Defendants contend that plaintiff's negligence was gross and that it caused the accident. Plaintiff denies being negligent, and contends that, even if he were, the defendants were guilty of contributory negligence, and had the last clear chance to avoid the accident. This contention is based upon the proposition that there is evidence that the last whistle was sounded 500 feet west of the crossing; that plaintiff heard nothing; that therefore the jury could have found that the bell was not ringing and the whistle not being blown; that defendants saw the plaintiff's peril when he was 70 feet from the crossing, and had the whistle been sounded, or the bell rung, that plaintiff would likewise have discovered his peril in time to have avoided the accident.

Plaintiff testified that he was looking west until he was 30 to 40 feet from the track. Assuming the truth of that statement, then it is perfectly clear that the train was in his full view at that time and had been for some 25 or 30 feet back.

However, assuming plaintiff's speed at that time was 20 miles an hour, he was traveling at the rate of about 30 feet a second and was accordingly two to two and one-third seconds away from the crossing. The speed of the train is fixed at 30 miles an hour, and, accordingly, it was traveling at a rate of about 44 feet a second, and, on that basis, was about 100 feet west of the crossing when the brakeman first saw the plaintiff. On that assumption, at that time the car and the engine were about 123 feet apart on a direct line. When the plaintiff was 40 feet from the crossing, the engine was about 60 feet from the crossing, and on a direct line was about 72 feet from plaintiff's car. At that point the entire train was visible. Plaintiff says he could have stopped his car in 15 to 20 feet. At 25 feet from the crossing, the engine and car were, on a direct line, less than

48 feet apart, and the entire train was visible. One of two conclusions is unescapable. Either plaintiff, contrary to his testimony, looked, saw the train, thought he could cross ahead of it and tried to do so; or he did not look when the train was clearly visible and drove upon the track in utter disregard of known and anticipated dangers, and was not in the least exercising his sight or hearing, either of which would have given him full warning in time to have avoided the accident.

It is difficult to reconcile plaintiff's testimony that he listened and looked to the west when he was 30 to 50 feet from the crossing with the admitted physical facts and the undisputed testimony of himself and other witnesses. Plaintiff explains his looking to the east with the statement that there was a cut in the right of way there which shut off the view to the east, until he was near the track. The evidence does not fully support his statement with reference to the obstructed vision to the east. However, assuming that to be true, the fact remains that the train, coming from the west, must have been in plaintiff's full view when he turned to look to the east.

"It is the positive duty of an automobile driver approaching a railroad crossing where there is restricted vision and where he is familiar with said crossing and its surroundings to look and listen at a time and place where looking and listening will be effective; and failure to observe this rule without reasonable excuse therefor is negligence." *McQuin v. Missouri P. R. Corporation,* 122 Neb. 423, 240 N. W. 515, and cases there cited.

Was there a reasonable excuse for plaintiff's failure to observe that rule? The only one suggested by the evidence is that his vision to the east was obstructed until he approached the track and that therefore he looked toward the east. However, plaintiff contends that his vision to the west was likewise obstructed as he approached the crossing. The same reason which prompted him to look to the east likewise existed to prompt him to look to the west. Nothing diverted his attention from his driving, nor from

the known hazards of the crossing and the highway at that point. A reasonable excuse is not shown.

Was there negligence on the part of the defendants? It is contended that defendants were negligent in not seeing the plaintiff and his position of peril more quickly. By the same reasoning, it is also true that the plaintiff was equally negligent in not seeing the train and in realizing his obvious position of peril.

Plaintiff cites section 74-562, Comp. St. 1929, which is as follows:

"A bell of at least thirty pounds weight, or a whistle shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and be kept ringing or whistling until it shall have crossed such road or street, under a penalty of fifty dollars for every neglect, to be paid by the corporation owning or operating the railroad, and also be liable for all damages which shall be sustained by any person by reason of such neglect."

We have assumed from the testimony favorable to the plaintiff that beginning 500 feet west of the crossing and thereafter the whistle was not blown nor the bell rung. However, this accident took place in the open country, and there were no unusual noises. We must recognize that freight trains, pulled by steam engines, make noises that are loud and distinguishable from other noises.

"Where it is undisputed that a traveler on a highway failed to exercise reasonable precaution, by not looking at a reasonable point where he could have seen an approaching train, his negligence will defeat a recovery for a collision with a train at a crossing, even though no signal by the locomotive bell or whistle was given." *Moreland v. Chicago & N. W. R. Co.*, 117 Neb. 456, 220 N. W. 692. See, also, *Lewis v. Union P. R. Co.*, 118 Neb. 705, 226 N. W. 318, and *Belz v. Chicago & N. W. R. Co.*, 119 Neb. 312, 228 N. W. 617.

Section 20-1151, Comp. St. 1929, is as follows: "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the

fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

This statute was before this court for construction in the case of *Morrison v. Scotts Bluff County,* 104 Neb. 254, 177 N. W. 158. In that case, this court said: "The true rule is that, if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery."

That holding has been repeatedly affirmed and is now the settled rule of construction of that statute. The negligence of the plaintiff in this case was certainly more than slight and any negligence of the defendant was not gross in comparison therewith, and as was said in *Troup v. Porter,* 126 Neb. 93, 252 N. W. 611, there can be no recovery.

Plaintiff, however, while not denying that he failed to look to the west when within 30 to 50 feet of the crossing, contends that the defendant, in the exercise of due care and the use of the instrumentalities at hand, had an opportunity to prevent the collision, and that the doctrine of the last clear chance applies.

In *Wilfong v. Omaha & C. B. Street R. Co.,* 129 Neb. 600, 262 N. W. 537, this court said: "The last clear chance doctrine in this state, as applied to the situation here pre-

sented, is that, when a street car runs against a person causing his injury, liability arises, when the peril is discovered by the motorman, or by the exercise of ordinary or reasonable care and caution could have been discovered, in time to have avoided the injury."

In *Nyegomir v. Union P. R. Co.*, 130 Neb. 380, 264 N. W. 879, this court said: "In order for the plaintiff to prove liability under this doctrine, it is incumbent upon her to prove by competent evidence that just before the accident the deceased was in a position of peril; that the railroad company or its agents knew or by the exercise of ordinary care ought to have known of his peril; that defendant, after receiving such knowledge, had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; that defendant failed to exercise ordinary care to avoid the impending injury, and that deceased was injured as a result thereof."

After the discovery of plaintiff's peril, could the defendants have avoided the accident?

In order to sustain his contention that the defendants had the last clear chance to avoid the accident, plaintiff must accept the testimony of defendants (the brakeman and the fireman) that they did not see the plaintiff until he was 60 or 70 feet from the crossing, and that they could not have seen him before that time. Prior to that his immediate approach to the crossing was hidden by the cut in the highway and by the corn. At that point, the weeds growing on the defendants' right of way did not obstruct their view. It is also clear that when plaintiff was first seen it was impossible for the defendants to stop the train in time to avoid the accident.

We have assumed that the plaintiff was approaching the crossing at a rate of speed of 20 miles an hour. He was traveling about 30 feet a second, and his position was discovered when he was 60 to 70 feet from the crossing in distance and from two to two and one-third seconds away in time.

Assuming the truth of plaintiff's statement that he could

stop his car in 15 to 20 feet, and under the circumstances disclosed by this testimony, it follows that, where a car is traveling 20 miles an hour, it would take slightly over a second of time to stop it in 15 feet. Therefore, a warning during the last second before the collision would not have avoided the accident. It follows that there was not more than one and a third seconds after plaintiff's peril was discovered that a warning could possibly have been effective. During that time, it would have been necessary for the head brakeman to turn and shout to the engineer to stop the train. The engineer would have had to have heard the alarm, reach for and pull the whistle cord, and set the mechanical operations of the whistle in motion. Plaintiff would have had to have heard the whistle, and then apply his brakes, and the brake mechanism would have had to operate. Between each of these operations, there would have been the added time necessary for the human and mechanical reactions to put in operation the various acts. All of these movements would have had to have been concluded in not to exceed one and a third seconds.

The doctrine of the last clear chance has been before this court for application in many cases. The question of time involved to prevent an accident has been considered on several occasions. In *Barrett v. Alamito Dairy Co.*, 105 Neb. 658, 181 N. W. 550, this court said: "Under all of the circumstances it is quite apparent to us that the danger did not arise until almost the instant of the collision. It was so small a fraction of time that there was no reasonable opportunity of avoiding the collision after the occupants of the car were in a place of danger. In view of all of the circumstances we are convinced that reasonable minds could not say that the wagon-driver was negligent in not sooner anticipating the danger of a collision."

A comparable set of facts may be found in the case of *Tynon v. Missouri P. R. Co.*, 101 Neb. 810, 165 N. W. 148, wherein the court discusses the doctrine of the last clear chance. It was held not applicable where instantaneous action was necessary.

It must be considered also that the last act necessary to avoid the accident was that of stopping the automobile, an act which the plaintiff alone could perform. The defendants acting alone could not have avoided the accident. The plaintiff's position in and of itself, prior to and when discovered by defendants' brakeman and fireman, was not one of peril. The defendants cannot be charged with negligence for having failed to see him before that time. Had they seen him prior to that time, they had no reason to expect that he would not stop. It is the common practice of drivers to approach within a few feet of a crossing before stopping for a train to pass. It is not a common practice for drivers to stop at distances of more than 70 feet from a crossing. Had the defendants seen the plaintiff prior to the time they did, they had the right to expect him to do the ordinary act of stopping his automobile. Plaintiff's speed was not excessive at any time and was not such as would have caused alarm to defendants had he been discovered prior to the time he was seen. The peril was one that was caused by the negligent act of the plaintiff in continuing to approach the crossing without looking to the west, when to have done so would have disclosed his danger to him in time for him to have stopped his car.

From the time that plaintiff's peril was discovered there was not sufficient time to avoid the accident, and the defendant company and its agents did not have the ability at that time to avoid the impending collision. It necessarily follows that the doctrine of the last clear chance does not apply in this case.

The only question remaining is whether or not questions of fact should have been submitted to the jury. The answer is found in the case of *McDonald v. Omaha & C. B. Street R. Co.*, 128 Neb. 17, 257 N. W. 489: "It has been the settled rule in this state that, where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but on the other hand, where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as

compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant." See cases there cited.

The judgment of the trial court is

AFFIRMED.