VERNON LOUDY, APPELLEE, V. UNION PACIFIC RAILROAD
COMPANY, APPELLANT.

21 N. W. 2d 431

FILED JANUARY 11, 1946.   No. 31927.

T. F. Hamer, G. C. Holdrege, J. C. Tye, and R. B. Hamer, for appellant.

Dryden & Jensen, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

This is an action at law to recover for damages to plaintiff's automobile in a collision between it and a train owned and operated by defendant. Upon trial to a jury plaintiff was awarded a verdict and judgment. Defendant's motion for new trial was overruled and it appealed to this court. There are numerous assignments of error but since our decision must be that the trial court erred in overruling defendant's motion to dismiss or direct a verdict at the conclusion of plaintiff's evidence it will not be necessary to discuss the other assignments.

Plaintiff's petition alleged substantially that the collision and damages proximately resulted from negligence of defendant because it: (1) Negligently failed to keep in repair good and sufficient crossings over its tracks including the grading, ditches, and culverts over its right-of-way contrary to section 75-220, R. S. 1943; (2) negligently failed to blow a whistle or ring a bell continuously for at least 80 rods east of the intersection of the highway and its tracks to warn plaintiff's driver of the approach of its trains, contrary to section 74-573, R. S. 1943, and (3) negligently failed to stop its train after the position of plaintiff's car was seen or by the exercise of ordinary care should have been seen on the tracks in time to have avoided collision with it. Defendant's answer admitted the collision, denied generally that it was negligent as claimed, and alleged that

any damages suffered by plaintiff were caused solely by the negligence of the driver, plaintiff's wife.

Decision depends upon the evidence adduced in plaintiff's behalf and rules of law applicable thereto. In arriving at the conclusions hereinafter set forth we are mindful of the well-established rule that: "A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. However, we must also bear in mind that where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination. Witthauer v. Paxton-Mitchell Co., ante p. 436, 19 N. W. 2d 865.

The evidence adduced in plaintiff's behalf is substantially as follows: At the time of the accident, midafternoon, March 29, 1944, plaintiff's wife was permissively driving his car. Hereafter she will be called the driver. It is conceded that any negligence on her part should be imputed to plaintiff who was not then a passenger in the car. The wife's sister was riding with the driver at that time but she did not testify at the trial.

The driver proceeded west out of Gibbon, Nebraska, on Highway 30 for approximately a mile and a quarter, at which point she turned from the pavement to the left over a country road, intending to visit a brother who lived just south of defendant's tracks, which extend east and west across the road. It is approximately 100 to 125 feet south from the pavement to the north rail of defendant's tracks. The road first declines sharply down from the pavement to a chronic mud hole which at that point covered most of the road and was located inside of defendant's right-of-way fence. South of the mud hole the road inclines quite steeply

up to and over defendant's tracks. For a distance of 50 to 60 feet south between the mud hole and the tracks the road was in good, serviceable condition having both gravel and cinders upon it. There is no evidence of any defect in the railroad crossing itself.

Nothing obstructed a full view of defendant's tracks clear up to the town of Gibbon unless it was an east and west row of telephone or telegraph poles located some distance north of the tracks which only partially obstructed the view at that point for a short distance. No complaint is made that they obstructed the driver's view in any manner except for a short distance south of the pavement. It had snowed two days previously but most of it had melted. The day was fairly cold and clear with a brisk wind from the northwest. Plaintiff's car was mechanically in perfect condition and his wife was a good driver with years of experience. She was familiar with the road and the railroad crossing having driven and ridden over it many times. She had ridden over it as recently as the day before.

The car windows were all up. As the driver turned from the pavement to the south she testified that she looked both to the right and left but saw no train. She drove 10 or 15 miles an hour until she reached the mud hole having angled to the right side of the road so that only two wheels of the car tracked in the mud. There the car slowed up, started to labor and she shifted into second gear to approach the tracks.

As the driver left the mud hole she looked to the left again but says that she saw no train; says that she didn't look for smoke and didn't hear a whistle or bell ringing. However, her brother, who testified for plaintiff, said positively and with repeated emphasis that he heard the whistle blowing, "an unusual lot of whistling", "considerable whistling", at the time the train passed approximately 50 rods east of his place. Whether the bell was ringing he could not recall.

Nevertheless, the driver testified that while she was proceeding slowly, almost stopped, and at a point four to ten

feet more or less before reaching the tracks, or just as she approached the tracks, she looked again to make sure. She then saw defendant's train three or four city blocks distant coming awfully fast from the east toward her. She could not tell whether thereafter its speed slackened. Plaintiff adduced no other evidence from which the speed of the train could be ascertained.

After she saw the train, the driver did not apply her brakes and stop in a short distance or almost instantly as without doubt she could have done. Instead she tried to hurry the car on but it had slowed down so much that she saw she could not go on across so she shifted from second directly into reverse which killed the motor and the car stopped on the track. The sister then said: "Get out of the car" and started to do so. However, the driver stepped on the starter, tried everything in a quick motion but the car would not start. Thereupon, the train being a short distance away, she opened the door, jumped out, ran 10 or 15 feet northeast nearly to a fence running north and south and, almost instantly, before she could turn around the train struck the car. She thus escaped injury. The sister who attempted to escape from the right side of the car was not so fortunate and suffered personal injuries. The driver thinks that the train went on to the next crossing before it stopped and backed up to the scene of the accident.

The driver, the only eyewitness who testified for plaintiff, stated and positively reaffirmed the facts substantially as above set forth on direct examination and as positively repeated and reaffirmed them upon cross-examination. True, by further inquiry upon redirect, plaintiff's counsel did attempt, by assuming facts most of which were either contrary to or not in the evidence, to have the driver draw conclusions therefrom and place the train farther away from the crossing than it actually was and have plaintiff's car on the track longer than it could have been apparently in an effort to make operative the doctrine of the last clear chance. Be that as it may, we are of the opinion in any event that the assumptions thus presented by that inquiry

adduced answers which were at most mere possibilities or probabilities, as distinguished from facts.

To the issues and facts thus presented we must apply the law. For clarity and convenience we will first dispose of the question whether plaintiff was entitled to the benefit of the last clear chance. In Nyegomir v. Union P. R. Co., 130 Neb. 380, 264 N. W. 879, it was held: "To recover under the doctrine of the last clear chance, a plaintiff must have been in a position of peril which was known or, by the exercise of ordinary care, ought to have been known to defendant in time to avoid injury by the exercise of ordinary care." And, "The fact that the person injured was in a place of danger and so situated that he could have been observed by the railroad engineer in time to have avoided the accident must be proved by a preponderance of the evidence. It is facts and not probabilities that must be thus established." See, also, Zitnik v. Union P. R. Co., 91 Neb. 679, 136 N. W. 995; Mundt v. Chicago, R. I. & P. R. Co., 136 Neb. 478, 286 N. W. 691.

In the opinion Nyegomir v. Union P. R. Co., *supra*, this court clearly stated the factual elements which must be so proved to invoke the doctrine. In that connection it was said: "In order for the plaintiff to prove liability under this doctrine, it is incumbent upon her to prove by competent evidence that just before the accident the deceased was in a position of peril; that the railroad company or its agents knew or by the exercise of ordinary care ought to have known of his peril; that defendant, after receiving such knowledge, had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; that defendant failed to exercise ordinary care to avert the impending injury, and that deceased was injured as a result thereof. Banks v. Morris & Co., 302 Mo. 254, 257 S. W. 482."

An examination of the evidence heretofore recited discloses without doubt that plaintiff completely failed to establish these necessary factual elements by competent evidence and we conclude that he was not entitled to the benefit of the last clear chance.

We turn then to the remaining issues. It is well settled in this jurisdiction that it is the duty of a traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains. He must look, where, by looking, he could see, and listen, where, by listening, he could hear and if he fails without reasonable excuse to exercise such precautions then he is guilty of contributory negligence more than slight, as a matter of law, and no recovery can be had for damages resulting from collision with a passing train. In Rickert v. Union P. R. Co., 100 Neb. 304, 160 N. W. 86, it was held: "A traveler upon a public highway, who attempts to cross a railroad track in front of an approaching train, if he knew, or ought to have known, of its approach, is guilty of contributory negligence which will prevent a recovery for resulting injuries, if the approaching train was in such close proximity to the crossing that a reasonably prudent person could not fairly expect to cross in safety ahead of it." These applicable rules in one form or another have also been stated and applied in Eggeling v. Chicago, R. I. & P. R. Co., 119 Neb. 229, 228 N. W. 361; Lewis v. Union P. R. Co., 118 Neb. 705, 226 N. W. 318; Haffke v. Missouri P. R. Corporation, 110 Neb. 125, 193 N. W. 257; Askey v. Chicago, B. & Q. R. Co., 101 Neb. 266, 162 N. W. 647; Moreland v. Chicago & N. W. R. Co., 117 Neb. 456, 220 N. W. 692; and Mundt v. Chicago, R. I. & P. R. Co., *supra.*

Under the circumstances presented if we assume for the purpose of argument only that plaintiff adduced competent evidence that the bell on defendant's locomotive was not ringing and that the whistle was not blowing, as required by statute, it will be of no assistance to him in establishing his case. The three latter cases above cited are authority for the rule that where it is undisputed that a traveler on a highway failed to exercise reasonable precautions by looking and listening at a reasonable point where he could have seen an approaching train in time to stop before reaching the tracks, his negligence, as a matter of law, will defeat a recovery for damages resulting from collision with

a train at a crossing even though no signal by the locomotive bell or whistle was given as required by law.

Clearly the driver's negligence in the case at bar, as a matter of law, would bar plaintiff's right to recover unless the mud hole on defendant's right-of-way was in some manner a legal excuse for her failure to look and listen or it could be said to be the proximate cause of the collision.

If plaintiff's theory is that the mud hole constituted an excuse for her admitted negligence then that contention is without merit. In Haffke v. Missouri P. R. Corporation, *supra*, plaintiff approached a railroad crossing in low gear at about two miles an hour and could have stopped within a distance of one foot. Although an approaching train was visible to a motorist on the highway for at least 24 feet before reaching the crossing, he did not see it and was struck. He sought to excuse his failure to look for the train during the last 24 feet by showing that the road was in bad condition, that it was soft and that there were ruts in it almost axle deep which required that his whole attention be centered upon his driving. In that situation the court said: "We do not consider, however, that the circumstances were such as to excuse him from looking. A mere glance occupying but a fraction of a second would have sufficed to warn him of the approaching train." The lower court's direction of a verdict because plaintiff's contributory negligence was more than slight as a matter of law and precluded recovery was sustained. See, also, Bunton v. Atchison, T. & S. F. Ry. Co., 100 Kan. 165, 163 P. 801.

In the case at bar the train admittedly could have been seen for a mile and a quarter and the driver had between 50 and 60 feet of good roadway after leaving the mud hole in which to have seen and heard the oncoming train. Certainly under such circumstances the defect could be no excuse for her failure to do so in time to have stopped the car and prevented the collision.

If we assume, without deciding, that defendant was obligated by statute to maintain the highway within its right-of-way, we must nevertheless conclude that the mud hole

was only a condition and not the proximate cause of the collision. It is the rule that ordinarily where the negligence of one party is merely passive and potential causing only a condition while that of the other is the moving and effective cause of the accident, the latter is the proximate cause. Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117; Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825.

In Baltimore & O. R. Co. v. Reeves, 10 F. 2d 329 (an Ohio case), the court assumed, without deciding, that the railroad company was required under a statute similar in many respects with our own to maintain the highway. Nevertheless, it was said in the opinion: "We are satisfied that this highway defect, even if due to defendant's default, cannot constitute an independent, affirmative basis of recovery. * * * It has no direct tendency to lead to a crossing collision; it only surrounds the traveler with a condition, save for which he might not have been injured."

We are convinced that plaintiff's evidence failed to make a case for the jury and the trial court should have sustained defendant's motion to dismiss or to direct a verdict for the defendant at the conclusion of the plaintiff's evidence. For the reasons heretofore stated the judgment of the trial court is reversed and plaintiff's action is dismissed.

REVERSED AND DISMISSED.