MARK STARLIN, APPELLEE, V. BURLINGTON NORTHERN, INC.,
A DELAWARE CORPORATION, APPELLANT.
228 N. W. 2d 597

Filed May 1, 1975. No. 39729.

Knudsen, Berkheimer, Endacott & Beam, for appellant.

Bauer, Galter & Geier, for appellee.

Heard before WHITE, C. J., McCOWN, NEWTON, and CLINTON, JJ., and KELLY, District Judge.

KELLY, District Judge.

This is an action at law to recover damages for personal injury suffered by the plaintiff while a passenger in an automobile involved in a collision between it and a train, owned by defendant and operated by its engineer. Upon trial to a jury, the plaintiff was awarded judgment. Defendant's motion for a new trial was overruled and it appealed to this court. There are numerous assignments of error, but since our decision must be that the trial court erred in overruling defendant's motion to dismiss or direct a verdict at the conclusion of plaintiff's evidence, or at the conclusion of all the evidence, it will not be necessary to discuss the other assignments.

Plaintiff's amended petition alleged substantially that the collision and damages proximately resulted from the negligence of defendant because: (1) The engineer failed to keep a proper lookout; (2) the engineer failed to yield the right-of-way to the automobile occupied by the plaintiff; (3) the engineer failed to keep defendant's switch engine under reasonable control; (4) the defendant did not equip its engine with adequate or proper lighting; and (5) the defendant did not provide adequate or proper lighting at said intersection.

The decision depends upon the evidence adduced in plaintiff's behalf and rules of law applicable thereto in arriving at the conclusion hereinafter set forth. We are mindful of the well-established rule that a motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evi-

dence. Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. However, we must also bear in mind that where the facts adduced to sustain an issue are such that reasonable minds can draw but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination. Whitthauer v. Paxton-Mitchell Co., 146 Neb. 436, 19 N. W. 2d 865.

The evidence adduced on plaintiff's behalf reveals that the plaintiff was a passenger in a Volkswagen automobile, owned and operated by one Jay Madsen. The plaintiff occupied the passenger's side of the front seat of the automobile. A second passenger, John Robinson, was on the passenger's side of the rear seat. On December 5, 1971, at approximately 10 o'clock p.m., the automobile was proceeding in a northerly course on Cotner Boulevard in the City of Lincoln. Cotner Boulevard is the city route for U. S. Highway No. 6. As the automobile came to a point where the Burlington Northern tracks intersect at approximately 73rd Street, the automobile came into contact with a switch engine owned by defendant, pulling some 12 hopper cars, some of which were loaded and some of which were empty. The left front of the said switch engine came into contact with the right front of the automobile at approximately the center of the intersection. The injuries received by the plaintiff as a result of the accident were numerous and extensive.

Plaintiff's driver has no recollection of the accident itself, and can only recall certain events which substantially preceded the accident. The plaintiff testified that he did not see or hear the locomotive until immediately prior to the accident at which time he made an exclamation "Oh, My God!". The passenger, John Robinson, likewise testified that he neither saw the approaching engine nor heard any warning until he heard the plaintiff's exclamation. Testimony of the four members of the train's crew and an independent witness

stated that the bell on the train was ringing continously; that the engineer gave the standard signal on the train's whistle prior to the crossing; and that, after the standard signal was given, the engineer sounded the whistle of the train several more times prior to impact. One of the defendant's employees, Millard H. Hughes, testified that he was a member of the crew at the time of the accident. This witness further testified that he was acting as a flag man for the defendant, and immediately prior to the accident was standing approximately 7 feet from the east curb of Cotner Boulevard into the street. The witness further testified that he saw the approaching automobile coming toward the crossing from the south. He further testified that he attempted to signal the automobile of the approaching train with an electric lantern which he had in his possession. He further testified that when he saw a crash was imminent, he ran to the east and was approximately 50 feet from the crossing when the accident occurred.

The speed of the automobile immediately prior to the accident was somewhere between 30 and 55 miles per hour; the speed of the train was somewhere between 5 and 10 miles per hour. No witness saw the driver of plaintiff's automobile make any attempt to avoid the collision by either braking his vehicle or altering the course of travel. The testimony further indicated that when the engineer saw the approaching automobile and realized a collision was likely, he applied the emergency air brakes on the train.

The traveling public was warned of the railroad crossing by a standard reflective railroad crossing sign, installed by the Department of Roads, located approximately 273 feet to the south of the point where the accident occurred. At the crossing, itself, was a standard railroad cross-buck sign. The driver of plaintiff's vehicle, as well as both passengers, were very familiar with the crossing. On the night of the accident there had been some previous moisture and the pavement was

wet, however, no moisture was falling at the time of the accident. The switch engine was equipped with a headlight which was stationary, and illuminated the path ahead of the engine. The particular crossing in question was not protected by either a flashing red signal or crossarms.

The law in Nebraska is well settled that if the operator of a motor vehicle is familiar with a railroad crossing and the surroundings, it is his duty to look and listen at a time and place where looking and listening will be effective even though vision of the tracks is restricted, a failure to do so is less than the exercise of due or ordinary care and no recovery can be had for damages resulting from collision with a passing train. It is the duty of the driver of the automobile to have his car under such control that, when it comes to a place where it is possible to see and to hear an approaching train, he can stop and avoid a collision. Loudy v. Union P. R.R. Co., 146 Neb. 676, 21 N. W. 2d 431; Kennedy v. Chicago, R. I. & P. R.R. Co., 156 Neb. 345, 56 N. W. 2d 446.

The proximate cause of an injury is that cause which, in natural and continuous sequence, unaccompanied by any efficient, intervening cause, and without which the result would not have occurred. Although the question of proximate cause is ordinarily for the determination of the jury, where, upon the evidence produced, only one inference can be drawn, it is for the court to decide whether a given act or series of acts is the proximate cause of the injury. Ecker v. Union P. R.R. Co., 164 Neb. 744, 83 N. W. 2d 551.

In reviewing this case the court can come to but one conclusion, that the defendant was not negligent or that its negligence was not the proximate cause of the injury to the plaintiff. On the contrary, the sole proximate cause of the injury suffered by the plaintiff was the negligence of the driver of the automobile. The trial court should have entered judgment and directed a verdict in favor of the defendant at the close of all the

evidence for the reason that reasonable minds could draw but one conclusion.

REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.