Lois BARCLAY, Special Administratrix of the Estate of Walter Barclay, Jr., Deceased, Appellee,

v.

BURLINGTON NORTHERN, INC., a corporation, Appellant.

No. 75–1401.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1976.

Decided June 8, 1976.

Harry B. Otis, Omaha, Neb., for appellant; Philip L. Garland, Omaha, Neb., on brief.

Joseph K. Meusey, Omaha, Neb., for appellee; Patrick H. McDonnell, Omaha, Neb., on brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Burlington Northern, Inc. appeals from a judgment of the District Court in this diversity action tried under Nebraska law awarding appellee Lois Barclay $71,833.00 in damages resulting from a fatal accident at a public railroad crossing in Homer, Nebraska. On appeal, the railroad seeks reversal on three grounds: (1) that there was insufficient evidence of its failure to give proper warnings to submit the issue to the jury; (2) that appellee's decedent, Walter Barclay, Jr., was contributorily negligent as a matter of law; and (3) that the admission of evidence concerning a Homer ordinance restricting the speed of trains within the village limits constituted reversible error. We affirm the judgment of the District Court.[1]

On November 28, 1971, at approximately 1:00 p.m., Barclay was fatally injured when his truck-trailer combination was struck by a southbound Burlington Northern freight train at the intersection of Burlington's tracks with John Street within the corporate village limits of Homer, Nebraska. Just prior to the accident, Barclay was proceeding from the south on a state highway which parallels the railroad track on the east and had turned west onto John Street. The train, which consisted of two engines, sixteen freight cars, and a caboose, struck Barclay's vehicle at the rear dual wheels of its trailer.

According to the train crew, the train was traveling at a speed of 49 miles per hour just prior to the accident. The engineer and the brakeman, both sitting in the front engine, first saw Barclay's truck when they were coming out of a curve some 600 to 800 feet from the intersection. Because they initially thought the truck would clear the tracks, they did not apply the brakes or slow the train down at that time. After a few seconds, they realized that the truck would not clear and threw the train into emergency at about 250 feet from the intersection. An expert witness for appel-lee testified that had the emergency brake been applied when the crew first saw the truck, there would have been no impact. The crew also testified that the bell on the train was ringing for at least a quarter of a mile prior to the impact and that the headlight and oscillating light were in operation. They also testified, as did an eyewitness, that the whistle was blown at a distance of a quarter of a mile from the point of impact. Two brothers of the decedent who were near the scene testified that they heard no whistle.

At the time of the accident, there were two sets of flashers protecting the crossing. One was located at the northeast corner of the intersection of the track and John Street. This flasher was composed of six lights, two of which were facing southeast (toward Barclay). The other flasher was composed of a bell and four lights, two of which faced east (toward Barclay), and was at the southwest corner of the intersection. The engineer testified that the flashers at the southwest corner were working prior to the accident. He did not see the other flashers. Eyewitness Cecil Butts testified that the flashers at the northeast corner were working prior to the accident. One of Barclay's brothers testified that he had looked at the flashers facing west (away from Barclay) prior to the accident and they were not operating. It is undisputed that both sets of flashers were operational after the accident although the bell on the southwest flashers was not working and that flasher had been knocked down in the accident.

The unobstructed view to the north at the intersection is, upon approaching from the east, approximately 1100 feet. On the day of the accident, there were Burlington boxcars parked on a siding which limited the view to the north to approximately 600 to 800 feet.

Finally, at the time of the accident, Village of Homer Ordinance No. 65 limited the speed of trains using the crossing to 10

miles per hour. This ordinance, first enacted in 1916, was in full effect on the day of the accident but no attempt had ever been made to enforce the speed limit.

## I. Sufficiency of Evidence on Warnings

Burlington Northern contends that the District Court erred in failing to give a requested instruction based on the Nebraska rule concerning positive and negative evidence, which instruction would have had the effect of directing a verdict on the issue of Barclay's contributory negligence.[2] It is the appellant's position that in the face of the positive, affirmative evidence by the train crew and a third party witness that the whistle, bells, and flashers were in operation, the testimony by Barclay's brothers that these warning devices were not observed or heard to be operating was insufficient to warrant submission of the issue to the jury.

■ The Nebraska courts distinguish between evidence which is positive in character and that which is negative in character. Evidence negative in character has been held to be insufficient to warrant submission of a question of fact to the jury in the face of evidence positive in character. *Milk House Cheese Corp. v. Chicago, B. & Q. R.R.*, 161 Neb. 451, 464, 73 N.W.2d 679, 687 (1955). *See also Walsh v. Megan*, 139 Neb. 575, 578, 298 N.W. 158, 159 (1941). "Evidence is positive in character where the witness states that a certain thing did or did not happen to exist, and negative in character where the witness states that he did not see or know of the happening or existence of a circumstance or fact." *Fick v. Herman*, 159 Neb. 758, 774, 68 N.W.2d 622, 631 (1955). Thus, testimony may be positive in character although amounting to a negative statement or showing a negative situation. Evidence is negative when it tends to prove the nonexistence of a fact by reason of a failure of a witness to observe and remember its existence.

■ In this case, there was evidence positive in character by the train crew that the whistle was blown, the bell on the train was ringing, and the flashers at the southwest corner were in operation. There was also evidence positive in character by a disinterested witness that the whistle was blown one time at a distance of approximately one-quarter mile from the crossing, and the flashers at the northeast corner were in operation. The railroad claims that the evidence from Barclay's brothers was not positive in character but was negative in character, and thus the question of its negligence with respect to the warning devices should not have been submitted to the jury. We disagree. Robert Barclay viewed the accident from the west side of the tracks and was looking to the east as his brother attempted to cross the tracks. He testified that he looked at the flashers facing into Homer, that he "could see the lights clearly", and that they were not working. He also testified that he did not hear the train's whistle or bell although he was in a position to do so if they had been sounded. Donald Barclay did not see the accident itself but was within a block of the crossing and testified that he did not hear any whistle or bells although he too was in a position to do so. This testimony by the brothers consisted of affirmative statements that the warning devices were not in operation. They were both in a position to enable them through their senses to determine whether or not the warning signals were given and both testified from their memory of what they observed. They both testified that the warning signals were not given. Since the testimony was positive in character, the resolution of the conflicts in the evidence was

2. The proposed instruction read as follows:

You are instructed that all of the affirmative, positive evidence adduced at trial was to the effect that the flashers located on either side of the crossing were in full operation at least 20 seconds prior to the collision. Accordingly, if you can't [sic] find that such flashers were capable of being seen by Bar- clay upon his approach to the crossing and were not heeded by him as a warning of the approach of the train prior to his moving his truck over the crossing, you will find such evidence of contributory negligence on his part as will bar his recovery and you will bring in a verdict for the defendant and against the plaintiff in this action.

properly left to the jury. *See Fick v. Herman, supra,* 159 Neb. at 774–75, 68 N.W.2d at 631.

## II. *Contributory Negligence*

Appellant further contends that Barclay was guilty of contributory negligence more than slight as a matter of law, that recovery is thus barred under the Nebraska comparative negligence statute,[3] and that the District Court erred in not granting its motion for a directed verdict on the basis of contributory negligence.

In reviewing the District Court's denial of the appellant's motion for directed verdict based on sufficiency of the evidence, we note that federal and Nebraska standards are substantially the same, *Schneider v. Chrysler Motors Corp.,* 401 F.2d 549, 555 (8th Cir. 1968); *Grand Island Grain Co. v. Roush Mobil Homes Sales, Inc.,* 391 F.2d 35, 41 (8th Cir. 1968); and we need not choose between them in order to resolve this appeal.

█ A motion for a directed verdict should be granted "only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.,* 523 F.2d 833, 836 (8th Cir. 1975). "In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Id. See Starlin v. Burlington Northern, Inc.,* 193 Neb. 619, 620, 228 N.W.2d 597, 599 (1975). "[A] motion for directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed." *Starlin v. Burling-*

*ton Northern, Inc., supra,* 193 Neb. at 620, 228 N.W.2d at 599. Unless the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion, the motion for directed verdict should be denied. *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co., supra,* 523 F.2d at 836. With these principles in mind, we turn to the question of whether the District Court erred in denying appellant's motion for directed verdict in this case.

█ Contributory negligence is an affirmative defense under Nebraska law and the defendant has the burden of proof. *Kloewer v. Burlington Northern, Inc.,* 512 F.2d 300, 302–03 (8th Cir. 1975). The general rule in Nebraska governing a motorist's conduct in approaching a railroad crossing is set forth in *Milk House Cheese Corp. v. Chicago, B. & Q. R.R., supra,* 161 Neb. at 463–64, 73 N.W.2d at 686:

It is the duty of a traveler on a highway, when approaching a railroad crossing, to look and listen for the approach of trains. He must look, where, by looking, he could see, and listen, where, by listening, he could hear, and if he fails without reasonable excuse to exercise such precautions, then he is guilty of contributory negligence more than slight, as a matter of law, and no recovery can be had for damages resulting from a collision with a passing train.

*See also Starlin v. Burlington Northern, Inc., supra,* 193 Neb. at 622, 228 N.W.2d at 600; *Neusbaum v. Chicago & N.W. Ry.,* 162 Neb. 754, 757–58, 77 N.W.2d 299, 301 (1956). There is no absolute duty under Nebraska law to stop, look, and listen before crossing, and the question of whether a motorist has been contributorily negligent is normally one of fact for the jury. *Kloewer v. Bur-*

---

**3.** Nebraska's comparative negligence statute provides:

In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant

was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury.

Neb.Rev.Stat. § 25–1151 (1964).

lington Northern, Inc., supra, 512 F.2d at 303. *See Hall v. Union Pac. R.R.*, 113 Neb. 9, 11, 201 N.W. 678, 679 (1924); *Crabtree v. Missouri Pac. Ry.*, 86 Neb. 33, 44, 124 N.W. 932, 936 (1910).

■ There was testimony in this case by Barclay's brothers that the flashers, bells and whistle were not in operation prior to the accident. There was no evidence that Barclay failed to listen or that he failed to look for any train within the zone of danger before proceeding onto the track. Viewing this evidence in the light most favorable to the appellee, it must be taken as established for purposes of this appeal that no warning signals were given by the railroad and that Barclay looked and listened for trains prior to attempting to cross the track. Under these facts, there was evidence to support the jury's verdict and we cannot conclude that the District Court erred in refusing to direct a verdict on the basis of contributory negligence.[4]

### III. Admission of Evidence on Speed Limit Ordinance

■ Appellant vigorously contends that the admission of evidence relating to its violation of the Village of Homer ordinance regulating the speed of trains constituted reversible error for two reasons: (1) the ordinance is unconstitutional in that it imposes an impermissible burden on interstate commerce, and (2) because the Village of Homer made no efforts to enforce the ordinance and because the ordinance is obsolete, violation of the ordinance should not constitute evidence of negligence. Even assuming that the appellant can properly raise the issue of the ordinance's constitutionality in this case and assuming that the ordinance is unconstitutional· or that lack of enforcement made the ordinance irrelevant, the admission of evidence relating to the railroad's violation of the speed limit as evidence of negligence would have been harmless error. There was other evidence of the railroad's negligence sufficient to make a submissible case,[5] and the admission of testimony concerning the violation of the ordinance was, if error at all, harmless error.[6]

The judgment of the District Court is accordingly affirmed.

---

4. Appellant contends that *Starlin v. Burlington Northern, Inc.*, 193 Neb. 619, 622, 228 N.W.2d 597, 600 (1975), mandates a different result in that it establishes a per se rule of contributory negligence. In that case, the court held that the "sole proximate cause of the injury suffered by the plaintiff was the negligence of the driver of the automobile" and that a recovery against the railroad was thus precluded. The court found that the railroad "was not negligent or that its negligence was not the proximate cause of the injury to the plaintiff." Our result is not at odds with this holding. In *Starlin*, the evidence was that the railroad had taken every possible precaution to void an accident and in no way could be said to have been the cause of the accident. There was abundant evidence of contributory negligence on the part of the driver such that there was but one reasonable inference: the driver was contributorily negligent in more than a slight degree. In this case, viewing the evidence in favor of the appellee, there is more than one reasonable inference. There was evidence to support the jury's verdict that Barclay was not contributorily negligent, or that his contributory negligence, if any, was not more than slight.

5. There was evidence (1) that the warning devices protecting the crossing were not in operation prior to the accident, and (2) that the train crew failed to take precautionary measures to slow the train down when they first saw Barclay's truck and that had they done so the accident would have been avoided.

6. The court's instruction did not mandate a verdict for the plaintiff if the jury found the ordinance had been violated; it merely told the jury that the violation, if proved, could be evidence which the jury could consider in determining whether the defendant had been negligent.