CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY V. EMIL SCHWANENFELDT.

FILED NOVEMBER 22, 1905. No. 14,005.

Negligence: EVIDENCE: QUESTION OF LAW. In an action wherein the plaintiff seeks to recover damages on account of an injury alleged to have been sustained because of the negligent acts of

the defendant, where it appears from the undisputed evidence that the plaintiff was guilty of the neglect of a clear legal duty and that his own negligence was the proximate cause of the injury, the question presented is one of law for the court, and not for a jury.

ERROR to the district court for Lancaster county: AL-BERT J. CORNISH, JUDGE. *Reversed*

*J. W. Deweese* and *Frank E. Bishop,* for plaintiff in error.

*A. W. Field, contra.*

JACKSON, C.

The plaintiff in the trial court recovered judgment against the defendant in an action for damages on account of a personal injury, which it was alleged he sustained because of the negligent acts of the defendant. At the close of the plaintiff's evidence the defendant moved for a directed verdict. The motion was denied and the defendant offered no evidence. From the judgment the defendant prosecutes error, alleging insufficiency of the evidence to sustain the verdict and judgment.

The facts disclosed by the evidence are: That the defendant owned and used a railway track along Eighth street in the city of Lincoln, a street extending from the south to the north along the east side of block 52. The track in question was a switch put in for the accommodation of wholesale houses, and was connected with the company's yards at the south end only, so that the only means of access to the track was from the south. At the point where the accident occurred the west rail of the railway track was 17 feet east of the lot line. An alley 16 feet in width extends east and west through block 52, and is paved with stone. On the east side of the block, and immediately south of the alley, a lumber yard, inclosed with a high board fence, with an office building at the east end of the lot, obstructs the view, so that it

9

would be impossible for a person passing through the alley from the west to the east to see a train approaching from the south, except at a point at or near the east end of the alley where it intersects Eighth street. Between the buildings on the east side of block 52 and the railway track there is nothing to obstruct the view to the south, except some telegraph poles. The plaintiff was the driver of a butcher's delivery wagon, drawn by a single horse. The seat on the wagon was at the front, flush with the end of the box, so that the driver occupying the seat would sit with his feet resting on the foot-board extending out from the bottom of the box. The plaintiff was hauling meat from the supply house of a packing establishment, and, in company with a companion, who occupied the seat on the wagon with him, drove through this alley from the west to the east onto the railway track, where his wagon was struck by a freight car then being moved from the south to the north, and as a result he sustained injuries, on account of which the action was brought. The horse was gentle, and being driven by the plaintiff.

The plaintiff, as a witness in his own behalf, testified that he had driven over that route almost every day for several months. He knew the location of the railway track; the location of the buildings; that it was his usual way to come back from the meat house; that the horse was trotting up the alley, and continued to trot in the same way until he, the plaintiff, saw the cars. As to when he saw the train he testified as follows: "Q. Tell the jury when you first saw the train. A. When I first saw it, it was right about two feet, I guess, from me. Q. You don't know what it was called your attention to the cars? A. No, sir; I don't know as to what it was exactly—the rattling of them I guess." Questioned as to an effort to jump, he answered: "I looked at the cars, and if I had jumped on my side I would have jumped under the wheels of the car." This testimony showed t' ; his sense of hearing and eyesight were both good. Both he and his companion testified that they did not hear

either a whistle or a bell, or other warning of the approaching train. His companion testified that he discovered the train when about 15 feet west from the track; that at that time the train was probably 17 feet from the alley crossing, meaning, doubtless, from a point where the alley, if extended east, would intersect the railway track; that he jumped out from the north side of the wagon and alighted about the center of the platform, between the buildings on the north of the alley and the railway track, and was unhurt. One witness on behalf of the plaintiff testified that he heard the train whistle as it rounded a curve into Eighth street, about two blocks below where the accident occured; that he did not know whether any warning signal was given after that or not. It appears from the evidence that the train was moving at the rate of five or six miles an hour, and an ordinance of the city of Lincoln, in force at the time of the accident, provided that no train, engine, car or truck, should be run over any railway within the corporate limits of the city of Lincoln at a greater rate of speed than four miles an hour, and that a bell of at least 30 pounds' weight should be continuously rung by the engineer or fireman in charge of the engine, while passing over any railway within the corporate limits of the city.

The question is thus fairly presented whether, under this state of facts, the court will be justified in saying that the judgment cannot stand. This court has uniformly adhered to the doctrine that, where the existence of a state of facts is undisputed, and where upon such facts different minds may honestly draw different conclusions from them as to whether or not such facts establish negligence or the absence thereof, the question as to the conclusion to be arrived at is a proper question for the trial jury, and not for a court. It has as uniformly held that, where the facts are undisputed and the evidence disclosed that the party has failed in the performance of a clear legal duty, the question is one for the court, and not for the jury. The line is clearly drawn,

and it would be idle to cite or comment upon the authorities. The law imposes upon railway corporations certain duties which they are not at liberty to disregard, and, for the purpose of the determination of this case, it may be conceded that the defendant was guilty of negligence in the operation of its train, because of the failure to give the warning provided by the ordinance of the city. But the obligations do not all rest upon the railway corporation. Individuals are required to have some regard for their own safety. Every person of mature years and in the possession of his faculties is bound to make a proper use of them to avoid danger, and we are all required to take notice of the fact that a railway crossing is a dangerous place, and he who makes use of it must exercise that degree of caution commensurate with the danger; and where, as in this case, the view from the alley was obstructed, so that a traveler might not observe an approaching train until he reached the end of the alley, he is required to exercise a degree of caution commensurate with such surroundings, and to avail himself of every possible unobscured opportunity, and the omission of any reasonable effort likely to be effective is negligence as a matter of law. *Koester v. Chicago & N. W. R. Co.,* 106 Wis. 460.

The plaintiff testified that, as he approached the railway track, he listened, but there is no pretense that he looked. He might be excused for not hearing, because the noise of his own conveyance, as it was being driven over the pavement, might easily be sufficient to overcome the rumble of the train; but no excuse is offered for not looking, with 17 feet of open space between the buildings and the railway track; and, at least that distance from the point where he might have observed the danger, he had every opportunity to see and avoid it. His companion did so. The opportunity afforded his companion was no greater than that possessed by himself, and the only reasonable explanation of the accident is that the plaintiff failed to exercise that degree of cau-

tion and prudence which the law required of him in approaching the point of danger, and that his own neglect was the proximate cause of his injury.

We conclude that under the evidence the case should not have been submitted to a jury, and we recommend that the judgment of the district court be reversed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.