EMIL SCHWANENFELDT, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY ET AL., APPELLANTS.

FILED FEBRUARY 20, 1908. No. 15,182.

1. Second Appeal: LAW OF CASE. The decision of this court upon a former hearing of the same case is controlling only as to the actual point then determined.

2. Trial: NEGLIGENCE: QUESTION FOR JURY. Where the existence of a state of facts is undisputed, and where from such facts different minds might honestly draw different conclusions as to whether or not such facts established negligence, the question is for the jury to determine.

3. Railroads: INJURY AT CROSSING. A traveler by wagon approaching a point where it will be necessary to cross a railroad track laid in a public street has a right to anticipate that trains upon such track will be operated according to law, and without negligence on the part of the railroad company.

4. ————: STREET CROSSINGS. A railroad company operating a train upon a city street, used in common by it and by pedestrians and vehicles, may be required to take precautions against collisions which are not necessary when it is operating trains upon its own right of way.

5. Evidence examined, and found to present questions proper to be submitted to the jury.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*F. E. Bishop* and *Fred M. Deweese,* for appellants.

*Field, Ricketts & Ricketts, contra.*

CALKINS, C.

The defendant owned and used a railroad track along Eighth street in the city of Lincoln, a street running north and south, and along the east side of block 52. The track in question was a switch put in for the accommodation of wholesale houses, and was connected with the company's yards at the south end only. At the point where the accident occurred, the west rail of the track was 17 feet east of the lot line. An alley 16 feet in width extended east and west through block 52, and was paved with stone. On the east side of the block, and immediately south of the alley, a lumber yard, inclosed with a high board fence, with an office building at the east end of the lot, obstructed the view, so that it was impossible for a person passing through the alley from west to east to see a train approaching from the south, except at the point at or near the east end of the alley where it intersects Eighth street. Between the buildings on the east side of block 52 and the railroad track there was nothing to obstruct the view to the south, except some telegraph poles. The plaintiff was driving a butcher's delivery wagon, drawn by a gentle horse, city broke. The seat on the wagon was at the front, flush with the end of the box, so that the driver occupying the same would sit with his feet resting on the foot-board extending out from the bottom of the box. The plaintiff was hauling meat from the supply house of a packing establishment, and had a companion who occupied the seat on the wagon with him. He drove through this alley from west to east at a jog trot. As he emerged upon Eighth street from the alley he was struck by a freight car, one of a train of 8 or 10 cars being

backed north upon the track in question. As a result of this collision he sustained injuries on account of which this action was brought. There was a judgment for the plaintiff upon the first trial, which was reversed by this court. *Chicago, B. & Q. R. Co. v. Schwanenfeldt*, 75 Neb. 80. A second trial was had, which resulted in another verdict for the plaintiff; and, from a judgment rendered upon this verdict, the defendant again appeals.

1. The defendant urges that the former decision of this court has become the law of the case and controls its determination upon this hearing. The record of the case before this court at the former hearing failed to show that the plaintiff looked as he emerged from the alley to see if a train was approaching; and the court held that, no excuse being offered for his failure to so look, he was guilty of contributory negligence as a matter of law. The record now before us shows that at the second trial the plaintiff testified that he expected a man to be there if a train was approaching, and that he looked to see if there was one as he approached the track, but discovered no one. He also testified that he saw the train as soon as he came from behind the lumber yard. A decision of this court at a former hearing is controlling only upon the actual point decided. In this instance the former determination was based upon the one fact that the plaintiff did not look for the approaching train. The evidence now shows that he did so look, and that decision is not applicable to the facts as now presented.

2. The question of negligence and contributory negligence is frequently a complex and difficult one, which can only be established by inference drawn from primary facts. The proneness of human minds to differ in the observation of primary facts increases in geometrical ratio when it becomes necessary to draw inferences therefrom; and whether certain conduct constitutes negligence is usually held to be a question peculiarly suitable to be submitted to a jury. The rule established by a multitude of cases is that, when the existence of a set of facts is un-

disputed, and where from such facts different minds might honestly draw different conclusions as to whether or not such facts established negligence, the question is one for the jury to determine. *City of Lincoln v. Gillilan,* 18 Neb. 114; *American Water Works Co. v. Dougherty,* 37 Neb. 373; *Omaha & R. V. R. Co. v. Brady,* 39 Neb. 27; *Omaha Street R. Co. v. Lochneisen,* 40 Neb. 37; *Chicago, B. & Q. R. Co. v. Pollard,* 53 Neb. 730.

3. Where, however, the facts are undisputed, and are such that reasonable minds can draw but one conclusion therefrom, it is a question for the court to decide, and it should do its duty fearlessly, not for the purpose of asserting its own prerogative, but in justice to the parties and the jury, which is put in a false position where it is directed to deliberate upon evidence from which it can reach but one possible conclusion. That the facts presented by the record in this case show such contributory negligence on the part of the plaintiff that a verdict should have been directed for the defendant is most insistently urged. In determining that question the first inquiry which presents itself to us is: What should the plaintiff have done in approaching the point of danger which he failed to do; or what did he do that he should not have done? That the degree of caution to be exercised by the plaintiff should have been proportioned to the degree of danger he should have anticipated will be generally admitted. In approaching this track the plaintiff was charged with taking account of the extent and character of the danger; but we think he was not required to anticipate that the defendant would operate a train upon this track in a negligent manner, considering all the surrounding conditions, nor fail to give such warnings of its approach as ordinary prudence demanded. *Continental Improvement Co. v. Stead,* 95 U. S. 161, 24 L. ed. 403; *Chicago, B. & Q. R. Co. v. Metcalf,* 44 Neb. 848; *Evansville & T. H. R. Co. v. Marohn,* 6 Ind. App. 646; *Crumpley v. Hannibal & St. J. R. Co.,* 111 Mo. 152; *Bunting v. Central P. R. Co.,* 14 Nev. 351; *Ernst v. Hudson River R. Co.,* 35

N. Y. 9; *Russell v. Carolina C. R. Co.*, 118 N. Car. 1098; *Stegner v. Chicago, M. & St. P. R. Co.*, 94 Minn. 166; *Sights v. Louisville & N. R. Co.*, 117 Ky. 436.

4. Since the degree of care to be required of the plaintiff depended upon the character of the danger he had to meet, it becomes necessary for us to inquire as to the manner in which ordinary prudence demands the defendant should use the track in question. A railroad company operating a train upon a city street, used in common by it and by pedestrains and vehicles, should exercise greater care to prevent collisions than when operating the same over its own right of way. *Norfolk & W. R. Co. v. Burge,* 84 Va. 63; *Cleveland, C., C. & I. R. Co. v. Schneider,* 45 Ohio St. 678. This is especially true where the use of such track is only occasional, and the distance to be traversed over the same is so short that there is no necessity for speed. If it is necessary to give warning by bell and whistle of the approach of trains regularly passing over its own right of way, it is certainly as important for the railroad to give such warning when operating its trains in a street used by it in common with the public; and if, as in this case, it is engaged in operating a train by backing, so that the engine is so far away that the ringing of the bell is useless, it would at least be a question for the jury whether some other means should not be adopted to give the necessary warning of the approach of its cars.

5. It appears from the evidence that the city ordinances restricted the speed of trains on this track to four miles an hour, and required warning to be given of the approach of trains by the ringing of the engine bell and the blowing of its whistle; that the train in question was being backed at the rate of five or six miles an hour; that the engine was so far away from the car that became the front of the moving train as to make a signal of its approach therefrom of little advantage; that no such signal was heard by the plaintiff or his companion; and that nothing else was done to warn travelers of the approach of the train. The

plaintiff was approaching on an up grade at a jog trot, and at a speed estimated by the witness Drake of four miles an hour. It was not possible for him to see an approaching train until he passed the lot line and was within 17 feet of the track, so that his horse's head would be very nearly at the point of contact with a passing car at the earliest instant at which the train became visible to him. To say that this evidence establishes the contributory negligence of the plaintiff as a matter of law, we must hold, first, that the plaintiff should, in the exercise of ordinary prudence, after the moving train came into view, have stopped his horse or jumped from his wagon in time to avoid the collision; or, second, that it was incumbent upon him to stop and look for an approaching train before he drove into the street. It seems to us that the question whether he might have stopped his horse in time, or jumped from the wagon or otherwise avoided the collision after coming in view of the train, was one about which different minds might honestly disagree, and therefore proper to be submitted to the jury. If the cars were moving at the rate of six miles an hour, and the horse at the rate of four miles an hour, the cars were approaching the south line of the alley at the rate of 8.8 feet a second, and the horse was approaching the defendant's track at the rate of 5.86 feet a second, and the plaintiff had probably less than one second to act upon the warning given him by the sight of the cars. It is a matter of common knowledge that the time required to respond to such warnings varies in different individuals and under different circumstances. Dr. Bolton, professor of psychology at the university of Nebraska, was sworn as a witness, and his evidence showed that by actual measurement from one-eighth to one-half a second is required to respond to an expected warning by those possessing the quickest mental and physical action; that response to an unexpected warning takes much longer; that response to a warning through the eye is slower than when the warning is through the ear; that if the warning threatens danger it may produce

temporary paralysis of the muscles and delay action; and that the quickest persons only require about one-third of the time to respond to a warning demanded by those of slower perception. We think that different minds might honestly draw different conclusions as to whether the plaintiff was guilty of any negligence after arriving at a place from which he could see the approaching train. We are not prepared to hold as a matter of law that it was incumbent upon the plaintiff to stop and look before entering upon the street. The rule that a traveler must stop and listen and look before crossing when approaching a railroad at an ordinary crossing has not been adopted in this state; and it certainly should not be applied to the crossing of a railroad switch laid in a public street. We think the plaintiff was justified in relying upon the lack of warning of an approaching train, and that a jury might well hold that ordinary diligence, as well as a due regard for human life and limb, requires a railroad company while using the public streets of a city to give adequate notice of the approach of its trains; and that it would not be unreasonable to say that, in a case where it was backing trains so that the signal from the engine would be ineffective, such trains should be preceded by a flagman, or other means taken to warn the passers-by of their approach.

In the defendant's assignment of error complaint is made of certain instructions, but these objections were not discussed upon the argument, the case being submitted upon the questions hereinbefore considered. We have, however, examined the instructions complained of, concerning which it is only necessary to say that they seem to us to be in accord with the views at which we have arrived.

We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.