## 23409. SOUTHERN RAILWAY COMPANY *v.* JETT.

DECIDED SEPTEMBER 29, 1934.

*A. G. Liles, Marvin A. Allison, Wheeler & Kenyon,* for plaintiff in error. *Poole & Fraser,* contra.

MacIntyre, J. The plaintiff's case is predicated upon the negligence of the railroad company in not maintaining a safe crossing, and the fact that when the plaintiff's husband started to drive across the crossing, the wheels of his automobile were stopped by the cross-ties and the rails, and he was unable to extricate himself in time to escape being killed by a freight-train of the defendant. It will be borne in mind that this is not an action for the destruction of the automobile, but for the death of plaintiff's husband. The defendant company pleaded that he could have avoided the injury by the exercise of ordinary care. The burden to establish this defense was on the defendant. The evidence for the plaintiff fails to show any of the circumstances at the time of the killing other than the facts that an automobile, presumably the automobile of the deceased, was struck on the crossing, that the wheels of the automobile had struck the end of the cross-ties and spun; that the front wheels had crossed the first rail and the rear wheel had struck the cross-tie, and it would not let the car go over on account of its being too high, neither would it let the car back off from the crossing. The plaintiff's evidence is silent as to what period of time elapsed between the stopping of the car on the crossing and the time it was struck by the engine of the defendant. The evidence for the defendant, *which was uncontradicted,* was that its freight-train of seventy-nine cars, pulled by one of the largest engines on the road, was proceeding towards Gainesville from Atlanta; that the *regular whistle signal was blown* for the crossing; that there was a curve which prevented the engineer from seeing the automobile until within 150 feet of the crossing, and it was impossible to stop the train before the automobile was struck; that the automobile was squarely across the tracks, and did not have its lights

burning; that the headlight from the locomotive shone through the car, and neither the engineer nor fireman saw any one in the car; that the approach of the train and the reflection from its headlight could easily have been seen by any one in the car in ample time for him to have got out of danger. There was evidence from the defendant that the deceased had been drinking immediately before he left his place of work in Buford about seven-thirty or eight o'clock at night. One witness testified that he tried to prevent the deceased from drinking, and that when the deceased got into his car to leave, he had a bottle of whisky in the side pocket of the door of his car. There was also evidence from the train crew that the odor of whisky was in the automobile after it had been struck, and that the car had a broken pint-bottle in it and was wet with whisky. There was also evidence that in embalming the body the stomach was opened and the odor of whisky was present. Another witness for the defendant, who lived about two hundred yards from the crossing where the accident occurred, testified that an hour or more before he heard the train stop he heard an automobile at the crossing, and "it went like it would spin on the railroad-track or something. It spun around there a right smart little bit, and then he put the lights out." More than an hour later he heard the train stop. The train crew testified that the radiator and engine of the automobile were both cold when the train stopped, and they were pulled from under the engine. There was negative testimony introduced by the plaintiff, showing that witnesses had seen the deceased shortly before he left Buford, and they did not notice that he was drinking.

We know that the questions as to negligence and as to the injured person's avoidance of danger after it becomes apparent are in most cases matters for the jury. It is possible that the evidence for the plaintiff was sufficient to have left this question to the jury if the suit had been for damage to the car. However, it is inconceivable to our minds how a person in possession of his normal faculties could have driven a car upon the railroad track and then had it to stall with him, whether by the negligence of the railroad company in the maintenance of the crossing, or not, and then have stayed in the car, when a train, with a headlight burning and the regular crossing signal given, was approaching. The evidence for the plaintiff *fails* to show that there was an emergency, and that

the stopping on the crossing caused by the alleged defective condition thereof occurred just as the train was approaching, and for that reason the plaintiff did not have time to alight from the car in time to prevent injury to himself. On the contrary all the evidence with reference to the point indicates that the car stopped, and when it could not be moved the lights were put out and the engine and radiator allowed to become cool. "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence [the negligent maintenance of the crossing], he is not entitled to recover." Civil Code (1910), § 4426. Under the circumstances in this case any person in possession of his normal faculties of sight and hearing (and there is no testimony going to show that the plaintiff did not possess his normal faculties) could have avoided the consequences of the defendant's negligence in failing to maintain a safe and proper crossing. This being the *only* ground of negligence which can be said to have been supported by the evidence introduced, we are of the opinion that the verdict is incorrect, and that the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*