# Richmond

ANDREW HORSLEY V. CHESAPEAKE AND OHIO RAILWAY CO.

November 27, 1950.

Record No. 3695.

Present, Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Oliver & Padgett*, for the plaintiff in error.

*Williams, Robertson & Sackett, Cauthorn, Radford & Rucker* and *Strother Hynes*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

Andrew Horsley, plaintiff in the trial court and here so designated, instituted an action against the Chesapeake and Ohio Railway Company because of personal injuries sustained by him in a collision between defendant's train and the truck that he undertook to drive across its track. At the conclusion of his proof the court sustained a motion to strike the evidence, which ruling resulted in a verdict and judgment in defendant's favor.

Briefly stated in the light most favorable to plaintiff, the salient and controlling facts are as follows:

About 1:00 p. m. on the 8th day of June, 1948, plaintiff, who was operating a 1948 Chevrolet truck, undertook to drive it along a private road across defendant's main line track, which traverses his employer's farm.

Seated in the front seat or cab with plaintiff were his son, Walter, and his brother, Ambrose Horsley, the latter occupying the extreme right seat and Walter sitting next to his father. After looking and seeing no train, and with his truck in low gear, plaintiff slowly approached and undertook to negotiate the crossing which was somewhat rough and "bumpy". The rails were about three inches higher than the graveled roadway and when the truck had proceeded sufficiently far for the front wheels to be between the rails, the motor stalled and the vehicle stopped. In response to a question as to why the motor stalled, plaintiff replied:

"I don't know why, excepting it was easing across the track and not giving gas enough, and the motor killed out."

The weather was clear with an unobstructed view in the direction from which the train approached. When the truck stalled, Ambrose Horsley looked to the right and saw the train coming, which was then almost half a mile away. He reported that fact to plaintiff so that he might take precaution for his safety. However, plaintiff hurriedly looked but did not actually see the train because the two occupants on his right partially obstructed his view. He then continued to "grind" on the starter in his effort to start the motor. Ambrose Horsley opened the right door of the truck and watched the oncoming train. He says that he did this in order to determine when to get out. Yet, with the train moving onward at a speed of about forty miles per hour, plaintiff continued his efforts to start the motor and made no preparation or move to leave the vehicle. As the train came nearer at undiminished speed and reached what was called the "Tool House", which was about 275 feet from the crossing Ambrose Horsley again warned plaintiff of the necessity of abandoning the truck. This warning was given in plain and urgent language: "Here this train right here; we better unboard." He then departed from the truck and was followed immediately by Walter. Upon receiving this second warning and with the train in that dangerously close proximity—275 feet away—plaintiff then looked and saw it but still made no effort to escape from the truck. He "continued grinding on the starter trying to get it started." Just about the time the other two occupants fled the vehicle, he succeeded in starting the motor and moved the truck forward. Yet before it cleared the track, it was struck by the train.

No attempt was made to move the truck on the power of the battery. It is, however, indicated that if such had been attempted, the height of the rails from the graveled surface might have prevented its accomplishment.

Plaintiff does not invoke the doctrine of last clear chance, nor here claim that the facts and circumstances are such as to warrant a recovery on that theory.

He does earnestly insist that the proof justified submission of the issue of contributory negligence to the jury. Reliance is placed upon the authority of Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 3, Permanent Edition, sec. 1765, at pp. 175-176, wherein it is said:

"It is normally a fact question whether a motorist is negligent who, being stalled on a track at a crossing in front of an approaching train, remains in his car until it is struck by the train. His duty in such a situation is conditioned entirely on the circumstances; there being no universal duty either to remain or to leave the stalled car.

"A motorist thus placed in a dangerous position is not justified in remaining to save property from injury, if he may reasonably apprehend that his staying will result in injury to his person. On the other hand, he may not timorously and hastily abandon the automobile and its contents to destruction, as it is also his duty to make reasonable efforts to save his property, which may have been placed in jeopardy, and self-preservation does not justify his abandonment of such property to probable injury before abandonment appears to him in the exercise of ordinary prudence to be reasonably necessary to avoid personal injury.

"Also additionally to the motorist's right or duty to attempt to save his property, thus stalled on the track, he is under the obligation of getting the car off the track, if such a course is reasonably practicable, for the purpose of averting possible danger to passengers or occupants of the approaching train.

"As a result of these various considerations, the motorist's failure to leave his car as soon as, or shortly after, it has stalled in the path of an approaching train cannot ordinarily be said either to constitute or not to constitute negligence as a matter of law, the question being one for the jury, but the circumstances may be such that a motorist will be contributorily negligent as a matter of law in failing to leave an automobile, stalled on a crossing in what he knows

to be a place of peril, where he has time and opportunity to go to a place of safety."

Plaintiff also states that the following authority sustains his claim that the issue presented is one for the jury's determination:

"* * * The rule seems to be that one is entitled to run some risk in attempting to save his property from damage, and that he may recover for any injury received in so doing, provided he has not recklessly exposed himself to danger. It is not contributory negligence *per se* for one who owes the duty to protect property to take a manifest risk to save it, unless the risk was wanton or unreasonable exposure to unnecessary danger. The test is whether a reasonably prudent man in the same exigency would have assumed peril." (44 Am. Jur., p. 824, sec. 570.)

We do not disagree with the broad and general principles of law announced by the foregoing authorities. Yet in the final analysis each case turns upon its individual facts. We find here no saving circumstance that justified plaintiff's remaining seated in the truck stalled on the track because of his questionable hope and erroneous belief that he might get it started and off the track before arrival of the oncoming train. Especially is this true because in addition to the verbal warnings, the other occupants physically demonstrated their announced belief and conviction that it was time to leave this truck by seeking safety in flight. His prolonged and unreasonably persistent efforts to start the motor in face of obvious and imminent peril took him from the realm of reasonable risk into that of certain disaster.

Being apprised of the train's rapid approach from the time it was first seen nearly one-half mile away and without indication that it was stopping or slowing down, plaintiff was not justified in relying completely upon the questionable contingency that he would be able to start the motor and move to a place of safety or that the engineer would take effectual steps to avoid the collision. *Dick* v. *Virginia Elec., etc., Co.,* 158 Va. 77, 163 S. E. 75, and *Vir-*

*ginia, etc., Ry. Co.* v. *Skinner,* 119 Va. 843, 89 S. E. 887.

Plaintiff's reckless conduct and unreasonable lack of response to known and imminent peril are strikingly akin to that disclosed in the cases of *O'Neill* v. *Middlesex, etc., Ry. Co.,* 244 Mass. 510, 138 N. E. 841, and *Truett* v. *Atlantic Coast Line R. Co.,* 206 S. C. 144, 33 S. E. (2d) 396.

In the *O'Neill Case,* that conduct is commented upon thus:

"And although the plaintiff saw the car when it was 200 yards away and heard it approaching with undiminished speed, he needlessly remained in a place where he was sure to be hit when a step or two would have placed him beyond danger of injury. Without considering the other defenses the ordering of a verdict for the defendant was justified on this ground."

And in the *Truett Case,* we find this pertinent language:

"Appellant testified that at the time the truck stalled, the train was a quarter of a mile away. This gave him. ample time to get out of the truck and off the tracks and thereby save himself. But this he did not undertake to do, but chose to remain in the truck in an effort to start it and in doing so he encountered difficulty with the gears. He made no effort to extricate himself from this peril until after he started the car. Having full knowledge of the condition of the doors of the car and the imminent danger from the approaching train, appellant recklessly took the chance of being able to start the car and drive it off the tracks before the train reached the crossing."

Believing that he would succeed in starting the motor and vainly hoping to have time to move the truck from its position of danger, Andrew Horsley persisted in that fixed purpose until actually struck by the oncoming train. Had he heeded the warnings and followed reasonable dictates of self-preservation by leaving the truck, as did his brother and son, his injuries would have been avoided. A desire on plaintiff's part to save the truck is understandable and praiseworthy, yet he was not warranted in recklessly electing to stake his safety upon the mere chance of starting the

motor in time. Mere commendable desire may not justify such reckless conduct and thus impose liability upon another.

The language in *Temple v. Hawkins*, 220 N. C. 26, 16 S. E. (2d) 400, is apt and pertinent:

"* * * Plaintiff may have been courageous and loyal to the extent of being foolhardy in his effort to save his employer's truck, but the evidence does not tend to show that he was either helpless or oblivious of his danger. Like Casabianca of old he stayed by his ship, alas too long! This may, perhaps, have been praiseworthy, but the consequences thereof are not the liability of the defendants."

The judgment is affirmed.

*Affirmed.*