## MARTIN *v.* SWEENEY
[No. 183, October Term, 1954.]

*Decided June 22, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles Martin Hue'ster* and *A. Parks Rasin, Jr.,* for appellants.

*J. Gilbert Prendergast,* with whom were *Richard Carvell* and *Clark, Smith and Prendergast* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

At the conclusion of the plaintiff's case, in an action to recover for personal injuries suffered in a motor vehicle accident, the court granted a motion for a directed verdict on the ground that the plaintiff was guilty of contributory negligence as a matter of law. The plaintiff below appeals from the judgment for the defendant for costs, urging upon us that reasonable minds could differ upon whether or not her acts, or failures to act, had been so prominent and decisive as to be obviously imprudent.

On a rainy November evening in 1951, the appellant, a seventeen year old girl, was coming back from the movies in Elkton in a light truck driven by her nineteen year old escort, Leonard Bacon, along Route 40 towards her home in Newark, Delaware.

The highway consisted of two twenty-four foot roadways separated by a fifty foot grass parkway. The eastbound roadway, which the pair were travelling, has a gravel shoulder on its right, or south side. U. S. Route 40 is a through highway, designed to expedite the free movement of traffic, which is almost always heavy on it. The road was being repaired on its Delaware side and a barricade had been erected, on which was a warning legend, requiring east bound traffic to pass over to the westbound roadway and proceed east single file. This barricade sign was brightly illuminated by red flares and electric lights. As the truck approached the barricade, diving in the slow or righthand lane, it started to cross to the lefthand lane when sudenly the car in front of it put on the brakes and Bacon, in turn, put on his brakes. The truck went into a spin and ended on the grass plot, facing the way it had come. The driver attempted to get back on the roadway he had just left, driving the wrong way, but the grass was wet and slippery from the rain and he was unable to do so, so he let some air out of the tires to get traction. A passing driver of a stake body truck stopped and came over to help but merely stood by. Again, he was unable to get back onto the concrete and he let more air out of the tires. He was

then able to drive onto the eastbound roadway in the fast lane, facing west, that is, facing oncoming traffic. His idea was to make a U-turn and proceed in the direction he had been going before he skidded. When he got back on the highway, he realized that the traffic was coming towards him, so he stopped the car, his explanation that he was afraid his engine would "conk out", took his flashlight and ran ahead on the road, his idea being to signal cars around the parked truck. The last car in the line of eastbound vehicles came out from behind a tractor-trailer in the slow lane, started to pass in the fast lane, ran side by side with the tractor-trailer for a time and then struck the parked truck, seriously injuring the appellant who had continued to sit in it. The record does not reveal whether the driver of the car which struck the truck did not see it until too late, or whether the headlights of the truck diffused in the rainy atmosphere into the luminous background of the barricade some one hundred fifty or two hundred feet behind the truck, or whether the driver, realizing that he was about to enter single lane traffic, thought that he could safely pass the slower tractor-trailer before he crossed over to the westbound roadway and single file traffic, and miscalculated. In any event, we assume the negligence of the appellee for we think the appellant to have been contributorily negligent as a matter of law.

The undertaking of Bacon to turn the truck around on a busy speedway was not only precarious, if not foolhardy, but unnecessary from its inception. He could have worked his way along the grass parkway until he was able to drive on to the westbound roadway, or until he turned around and entered the eastbound roadway and, finally, when he determined to stop on the eastbound roadway, he could have driven entirely across it and stopped on its shoulder, out of the way of oncoming traffic, until he was able to back around and again proceed east. If he had done this, he would not have violated, as he did, the command of Code, 1951, Art. 66½, Sec. 209, not to leave a vehicle, attended or not, upon the main

part of the highway if it be practicable to leave it off the highway. The appellant stood by in silence while Bacon chose and executed the most dangerous of the alternatives in driving onto the road, and similarly acquiesced in the subsequent violation of the statute, which directly contributed to her injury. *Restatement, Torts,* Contributory Negligence, Sec. 469 and Sec. 286.

Bacon knew he was leaving his truck in a place of danger. He said: "Well, the truck was in a dangerous position, I realize that, but with me being out in front of it with a flashlight signalling traffic around me, that took the danger away." He testified that his truck stood on the road a minute to a minute and a half before the accident.

The testimony of the young lady was the same as her companion's as to the original skidding and the efforts on the grass plot to get back on the road. She saw the driver of the stake body truck park his vehicle on the shoulder of the eastbound roadway and come over onto the grass plot to help. She said that as soon as Bacon got the truck on the highway, he stopped it, to her surprise, as she had expected him to make the full turn. "He stopped it, and grabbed the flashlight off the seat and jumped out and at that time I started to go out the side door and at that time I looked out the back window to where the truck was parked, I mean where the truck was, and I saw the truck driver * * * alongside the truck." She continued: "* * * then I turned around and when I turned around I could see this car pull in front of this truck coming down on the other lane, I saw this car pull out and start passing this truck coming down." She had noticed other cars going by while she was sitting in the truck, on the slow lane. She said: "* * * when we first came out, I was scared, when we first came on to the highway." She added: "* * * I still didn't know what was happening until—well, he was on top of the car, and then, unconsciously I tried to get away from it and I turned sideways, and then everything happened all at once."

She agreed that a minute to a minute and a half elapsed from the time Bacon stopped the truck on the concrete until the accident. She first saw the oncoming car as it came from behind the tractor-trailer, right after it came around the bend in the road, about nine hundred feet from the cross-over, which, in turn, was between one hundred and one hundred fifty feet to the rear of the truck in which she was seated. The young lady said that she did not see Bacon after he got out of the truck with the flashlight until after the accident, and she did not know whether the headlights of the truck were burning or not. She attended high school, had been in a drivers training class at school and had procured a driver's license, although she had not driven a car for a year.

It is axiomatic that the law places upon one the duty of exercising reasonable care for his own protection under any and all circumstances and that this requirement of the law is little more than is naturally practised under the instinct of self-preservation. What an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge to protect himself from harm. *Yockel v. Gerstadt,* 154 Md. 188, 194. This principle has been applied where one leaves a place of safety to venture into a place or posture of danger, and is harmed; in such cases, the venturesome one often has been held to be guilty of contributory negligence as a matter of law. *Yockel v. Gerstadt, supra; Billmeyer v. Whiteman,* 192 Md. 419; *Schaub v. Community Cab Co.,* 198 Md. 216; *Domeski v. Atlantic Refining Co.,* 202 Md. 562. Conversely, where one who remains in a place of danger with time and the physical ability to leave, and is harmed, the courts have often held such failure to act to be contributory negligence as a matter of law. *Restatement, Torts,* Sec. 466.

*Gulf. M. & O. R. Co. v. Freund,* 183 F. 2d 1005; *Truett v. Atlantic Coast Line R. Co.* (S. C.), 33 S. E. 2d 396, 398; *Seaboard Airline R. Co. v. Crowder* (Va.), 62 S. E. 2d 227, 232; *Horsley v. Chesapeake & O. Ry. Co.* (Va), 61 S. E. 2d 868; 870; *Virginia Electric & Power Co.*

*v. Ford* (Va.), 186 S. E. 84; *Smith v. Erie R.R. Co.,* 169 N. Y. S. 831; *Southern Ry. Co. v. Jett* (Ga.), 176 S. E. 700, 701; *Miller v. Baltimore & Ohio R. Co.,* 139 F. 2d 219 (applying the law of Pennsylvania); *Kraft v. Pere Marquette Ry. Co.* (Mich), 247 N. W. 727; *Franklin v. Louisville & Nashville & N. R. Co.* (Ky.), 102 S. W. 2d 1010; *Krouse v. Southern Michigan Ry. Co.* (Mich.), 183 N. W. 768; *Emmons v. Southern Pac. Co.* (Ore.), 191 P. 333; *Temple v. Hawkins* (N. C.), 16 S. E. 2d 400. These cases all involve cars which had stalled on railroad tracks. There is a real analogy, however, between a high speed expressway and a railroad track. In *Terry v. Smylie* (Miss.), 133 S. 662, 664, it was held that sitting in a car parked on a parkway in violation of an ordinance, was contributory negligence as a matter of law. In *Iverson v. Knorr* (S. D.), 298 N. W. 28, 30, it was held to be contributory negligence as a matter of law to drive an automobile down the left side of a roadway.

In *Pennsylvania R. Co. v. Simmons,* 159 Md. 114, an automobile stalled on the railroad track and was struck by a train of the appellant. Appellee, sitting in the front seat of the car, was seriously injured. The testimony was sharply conflicting as to whether the train was so near that it could not, in the exercise of ordinary care, have been stopped in time to avoid the accident, when the appellee was first in peril, or whether the automobile stood on the crossing for some sixteen to twenty-two seconds as the train approached. It was held that the case properly went to the jury on the questions of contributory negligence and last clear chance. It was strongly urged on the court by the appellant that the evidence clearly showed that the appellee had time to escape after the automobile became stalled and the court should have declared as a matter of law that it was a case of concurrent negligence. It seems to have been assumed by the parties and by the court in the opinion that if the appellee had had time to escape and had failed to do so, she would have been guilty of contributory negligence

as a matter of law. The ultimate question submitted to the jury was whether or not there was, in fact, time.

In the case before us, five minute elapsed between the time the truck first skidded until it was driven back on the roadway. The appellant chose to remain in the truck all of that time and made no protest as the driver began the hazardous task of turning around on the roadway for eastbound traffic. When the driver stopped the truck almost directly facing the oncoming traffic in the fast lane, the appellant admits she was scared and that she started to leave the truck. What caused her instinct of self-preservation to falter and why she did not obey that impulse, the record does not show. She chose to remain in what she must be deemed to have realized and, according to the testimony, in fact, did realize, was a highly dangerous place for from sixty to ninety seconds, when all she had to do to escape from the peril was to open the door immediately to her right and step on the grass plot a foot or two away. Whatever right Bacon had to feel that his flashlight warning would obviate the danger—and events proved how weak was the reed on which he leaned—the appellant had no such right because she testified that she never saw Bacon from the time he left the truck until after the accident. It might be inferred that she thought he had gone to the rear of the truck for she looked in that direction just after he left. Further, she did not know whether the headlights of the truck were on or not, so she could have derived no feeling of protection from that source. She knew she was parked almost in the same spot where her truck had skidded, when it had slowed down to enter the westbound roadway in accordance with the warning and command of the sign and barricade. She knew that the stake body truck was parked on the shoulder of the roadway, a car length or two to the rear of her truck, so that there was but one lane available for oncoming traffic—that between her truck and the stake body truck. She knew that the night was rainy, that the road was slippery and that she was on an expressway with automobiles, which

would have to slow down quickly to make the turn to the westbound roadway as she had done, coming at her at high speed. She admitted that she knew that automobiles might pass others in the lane on which her truck was standing. The appellant recognizes that she allowed herself to remain in a position of danger and that this directly contributed to her injury. In her brief she says it is easy to see that the trial court "appraised the situation in a cold, factual manner." She continues, speaking of herself: "The plaintiff did remain in a position which later proved to be precarious, one of peril, for a minute to a minute and a half; this fact is neither denied nor contested. If we go no further into the facts of this case than this outstanding, glaring, and most obvious one, we cannot escape the conclusion * * *" that the court was right in taking the case from the jury. In exculpation of this cold fact, the appellant argues that she was frightened and bewildered by the skidding. As has been noted, some five minutes elapsed after the skidding before the truck was driven back on to the road. The appellant admits that she was scared when the truck first drove back onto the highway, and a minute to a minute and a half went by after this before the accident happened. Her testimony, that she was frightened and started to leave the truck, shows that whatever her condition, it did not keep her from thinking of steps which might be taken to avoid her danger. The law holds her to the standard of conduct to which a reasonable person would conform in like circumstances. *Restatement, Torts,* Sec. 464 and Sec. 283. According to her own testimony, she observed the headlights of the car which struck the truck coming at her down the fast lane, side by side with the tractor-trailer, at a time when it was from two hundred to two hundred fifty yards from her. Even at a speed of fifty-five miles an hour, which was attributed to the oncoming automobile, it would have taken a number of seconds to drive the six hundred to nine hundred feet it did when fully in her vision. During those seconds, she made no attempt to leave the car.

In her brief, the appellant does not argue the rule of last clear chance but at the argument, she urged that it be applied to the case. We think that the facts show that the case was one of concurrent negligence and not one where the negligence of the defendant was consequential and that, therefore, the rule does not apply. The Court has delineated this controlling difference in several recent cases. See *Baltimore & Ohio R. Co. v. Leasure,* 193 Md. 523; *State v. Baltimore & Ohio R. Co.,* 196 Md. 459; *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 360. In the *O'Keefe* case, the Court quoted from *United Railways v. Sherwood Brothers,* 161 Md. 304, where a truck on the streetcar track was struck by a streetcar and the Court was not impressed with the argument that last clear chance should be invoked against the street car company, saying: " 'Nor is there any evidence that at that time the chauffeur could not have extricated himself from his position of peril by the exercise of ordinary care. All he had to do was to back his truck two or three feet. * * * But even if there were evidence that the motorman could have stopped the car after he saw or should have seen the truck in a position of peril, still, if the chauffeur could then have escaped by the exercise of ordinary care on his part, the doctrine would not apply. It would then be a case of concurrent negligence. And that takes the case out of the operation of the doctrine. * * * Of course, this does not apply to one who *actually* realizes that another is oblivious to impending danger and fails to do what he could to save him.' " *Restatement, Torts,* Sec. 480, 479; *Prosser, Torts,* Sec. 54. See also *Campbell & Sons v. United Rys.,* 160 Md. 647, 652; *Legum v. State,* 167 Md. 339, 355; *Truett v. Atlantic Coast Line R. Co.* (S. C.), 33 S. E. 2d 396, 398, *supra; Temple v. Hawkins* (N. C.), 16 S. E. 2d 400, *supra;* and annotation in 171 *A. L. R.* 365, 403.

In the instant case, the negligence of the appellant continued to the moment of the accident and there was no evidence that the appellee actually knew of her peril in time to avoid the collision. To the extent that *Pennsyl-*

*vania R. Co. v. Simmons,* 159 Md. 114, *supra,* is inconsistent with the views we have expressed as to the doctrine of last clear chance, it is overruled.

*Judgment affirmed, with costs.*