WILLIAM A. ECKER, ADMINSTRATOR OF THE ESTATE OF
MARGARET A. ECKER, DECEASED, APPELLANT, V. UNION
PACIFIC RAILROAD COMPANY, A CORPORATION, ET AL.,
APPELLEES.

83 N. W. 2d 551

Filed June 7, 1957.   No. 34099.

*Bertrand V. Tibbels, Firmin Q. Feltz,* and *Arthur R. Johnson,* for appellant.

*F. J. Melia, George C. Holdrege, James H. Anderson,* and *Frank J. Given,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, William A. Ecker, as administrator of the estate of his wife, Margaret A. Ecker, deceased, and for his own benefit, brought this action against defendants, Union Pacific Railroad Company, a corporation, and Edward M. Jensen, its engineer, seeking to recover damages for the death of plaintiff's wife, which was alleged to have been proximately caused by negligence of defendants. Hereinafter, William A. Ecker will be called plaintiff and Margaret A. Ecker, deceased, will be called plaintiff's wife or decedent. Defendant Union Pacific Railroad Company will be called the railroad company, and defendant Edward M. Jensen will be called the engineer, but when speaking of both they will be called defendants.

Plaintiff alleged in his petition that his wife's death occurred at about 2:46 a. m. on May 11, 1952, when his 1940 Chevrolet automobile, operated by him in a northerly direction, became stalled upon a rough and pitted railroad crossing installed by defendant railroad com-

pany, whereat its engine and train, approaching from the west, collided therewith. The alleged negligence of defendants was in effect that the railroad company failed to maintain and keep in repair its crossing where the collision occurred, as required by section 75-220, R. R. S. 1943; and that defendant engineer approached the crossing at an excessive rate of speed without keeping a proper lookout or giving timely warning, and failed to have the railroad company's engine and train under reasonable control in order to timely avoid collision with plaintiff's car after it became stalled upon the crossing.

Defendants' joint answer admitted that its engine and train approaching from the west, and a car driven by plaintiff in a northerly direction, collided at or about the time and place alleged, which resulted in the death of plaintiff's wife, who was a passenger in plaintiff's car. Defendants admitted that the railroad company had maintained and repaired the crossing since its installation. They then denied generally and alleged that the proximate cause of the collision and death of plaintiff's wife was her contributory negligence and the contributory negligence of plaintiff, which negligence was respectively more than slight as a matter of law when compared with any negligence of defendants. Plaintiff's reply was a general denial.

Upon trial to a jury and at conclusion of plaintiff's evidence, defendants' motion to direct a verdict and dismiss for the reason that the evidence adduced by plaintiff was insufficient to support a verdict in favor of plaintiff and against defendants or either of them was sustained, and judgment was rendered dismissing plaintiff's action. Thereafter, plaintiff's motion for new trial was overruled and he appealed, assigning only: "That the court erred in sustaining defendants' motion, made at the close of plaintiff's case, for dismissal of the action." We conclude that the assignment has no merit.

Decision depends upon the undisputed evidence ad-

duced in plaintiff's behalf and rules of law applicable thereto. In arriving at the conclusions hereinafter set forth, we are mindful of the following well-established rules: " 'A motion for a directed verdict must for the purpose of decision thereon be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the evidence.' Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. However, we must also bear in mind that where the facts adduced to sustain an issue are such that reasonable minds can drawn but one conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination. Witthauer v. Paxton-Mitchell Co., ante p. 436, 19 N. W. 2d 865." Loudy v. Union P. R. R. Co., 146 Neb. 676, 21 N. W. 2d 431. See, also, McIntosh v. Union P. R. R. Co., 146 Neb. 844, 22 N. W. 2d 179.

In that connection, as held in Leach v. Treber, *ante* p. 419, 82 N. W. 2d 544: "As a general rule, a party calling a witness vouches for his credibility and is ordinarily bound by any evidence he gives which is not contradicted or shown to be unreliable by evidence which would justify the trier of facts in arriving at a different conclusion."

In Guerin v. Forburger, 161 Neb. 824, 74 N. W. 2d 870, this court held: "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of the duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooper-

ating with actionable negligence for which defendant is responsible, contributed to the injury complained of as a proximate cause."

In Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673, this court held: "Although the question of proximate cause is ordinarily for the determination of the jury, where, upon the evidence produced, only one inference can be drawn, it is for the court to declare whether a given act or series of acts is the proximate cause of the injury."

In Loudy v. Union P. R. R. Co., *supra*, this court held: "Ordinarily where the negligence of one party is merely passive and potential causing only a condition while that of the other is the moving and effective cause of the accident the latter is the proximate cause." See, also, Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683.

It is generally the rule that in an action by plaintiff for his own benefit to recover for the pecuniary injury which he has suffered by reason of the death of his wife, wherein the evidence discloses that plaintiff was guilty of negligence more than slight as a matter of law, which proximately contributed to or caused the accident and death, it is the duty of the court to direct a verdict for defendant. Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Crandall v. Ladd, 142 Neb. 736, 7 N. W. 2d 642.

In Moreland v. Chicago & N. W. Ry. Co., 117 Neb. 456, 220 N. W. 692, cited with approval in Rogers v. Chicago, R. I. & P. Ry. Co., 39 F. 2d 601, we concluded that a motorist on a highway who is crossing a railroad track must use alertness and vigilance before he has taken or remains in a position exposing himself to peril or has come within the zone of danger, so that his precaution may be effectual, and a failure to do so will be held to be contributory negligence more than slight as a matter of law barring recovery.

In Goldman v. Grand Trunk Western Ry. Co., 287 Mich. 289, 283 N. W. 583, the court concluded that an

automobile driver who remained in his car that was stalled on a railroad crossing at night and was struck by a locomotive whose headlight was visible for a minute or two before the accident, was guilty of contributory negligence precluding any recovery.

Also, in Kraft v. Pere Marquette Ry. Co., 262 Mich. 494, 247 N. W. 727, plaintiff's car stalled on defendant's tracks where there was a clear view of approaching danger for about one-half mile. Plaintiff claimed that she looked when her car stalled, and saw no train. She then tried to start her motor and when she looked again the train was so close that she had no time to get out of her car. In the opinion the court said: "Due care required vigilance on the part of plaintiff while trying to start the motor. She knew she was in a place of danger if a train came along; she had time and opportunity to get to a place of safety, and, as long as she remained in the automobile, ordinary prudence required her to maintain such a watch as would enable her to escape. If the trainmen should have seen her peril she also should have sensed her peril, and availed herself of opportunity to avoid injury. * * * Defendant's motion for a directed verdict on the ground 'That plaintiff herself, as a matter of law, under the undisputed testimony, is guilty of contributory negligence,' should have been granted."

Also, in Gulf, Mobile & Ohio R. R. Co. v. Freund, 183 F. 2d 1005, 21 A. L. R. 2d 729, a case comparable in material and relevant respects with that at bar, the court, after citing numerous authorities, said: "The conclusion is inescapable that the proximate cause of appellee's unfortunate accident was his negligence in remaining in a position of known danger when, by the exercise of care commensurate with the danger which he was bound to know and understand, his injury would have been avoided.

"The judgment of the District Court is reversed, and this case is remanded with directions to dismiss the

action." See, also, Horsley v. Chesapeake & Ohio Ry. Co., 191 Va. 628, 61 S. E. 2d 868.

As said by this court in Craig v. Chicago, St. P., M. & O. R. R. Co., 97 Neb. 426, 150 N. W. 374, quoting with approval from Chicago, B. & Q. Ry. Co. v. Schwanenfeldt, 75 Neb. 80, 105 N. W. 1101: " 'Individuals are required to have some regard for their own safety. Every person of mature years and in the possession of his faculties is bound to make a proper use of them to avoid danger, and we are all required to take notice of the fact that a railway crossing is a dangerous place, and he who makes use of it must exercise that degree of caution commensurate with the danger.' See, Koester v. Chicago & N. W. R. Co., 106 Wis. 460."

Likewise, in actions like the one at bar wherein the evidence discloses that plaintiff's decedent was guilty of negligence more than slight as a matter of law, which proximately contributed to or caused the accident and death, it is the duty of the court to direct a verdict for defendant. In Seiffert v. Hines, 108 Neb. 62, 187 N. W. 108, we said: "Here the deceased knew that the automobile was approaching the crossing; he was in a position to look and listen for approaching trains; had he done so he could have warned the driver of the danger, or alighted from the moving automobile. Having failed to do this, his negligence contributed to his injury, and amounted to more than slight negligence in comparison with that of the defendant."

Also, in Gade v. Carlson, 154 Neb. 710, 48 N. W. 2d 727, we said, citing other authorities and quoting from Kerwin v. Thompson, Belden & Co., 110 Neb. 251, 192 N. W. 692: " 'A person who knowingly and of his own volition exposes himself to an obvious danger cannot recover damages for any injury which he might have avoided by the use of reasonable care.' "

In Krouse v. Southern Michigan Ry. Co., 215 Mich. 139, 183 N. W. 768, an action was brought by a husband to recover for the death of his wife who was a passenger

with him in an automobile struck by defendant's interurban car at a grade crossing upon which the automobile had stalled. Therein the court sustained direction of a verdict for defendant because the evidence disclosed that decedent, having notice and knowledge of an obvious approaching danger and ample time and opportunity with the exercise of reasonable care to get out of the automobile to a place of safety, had negligently failed to do so. See, also, Southern Railway Co. v. Jett, 49 Ga. App. 638, 176 S. E. 700.

We are required to apply such rules to the undisputed evidence in the record before us, which shows substantially as follows: On May 10, 1952, plaintiff and his wife went from their farm home to Paxton in plaintiff's Chevrolet sedan. Plaintiff drove his car at all times involved. They arrived at Paxton about 6 or 6:30 p. m. and went to a bar where they stayed about an hour. While there plaintiff had a drink of whiskey sour. They then went to a cafe where they had an evening meal. About 8 or 9 p. m. they went back to the bar and stayed until midnight visiting with friends. There plaintiff drank two more whiskey sours and his wife probably had some. At midnight they left the bar and went back to the cafe where they visited with friends while they had sandwiches and coffee. About 2 a. m. they left the cafe and drove west on a highway toward the farm home of friends about 1½ miles from Paxton. Such home was located on the south side of defendant railroad company's double parallel tracks running east and west, where a dirt road from north to south crossed over such tracks and went on to their friends' home. There were open wooden gates located respectively on both the north and south ends of such dirt road at the railroad company's right-of-way lines.

Plaintiff and his wife, who sat in the front seat at his right, approached the north end of the crossing as they drove west on the highway north of the railroad tracks, then turned left toward the south upon the dirt road

and drove over the railroad crossing to their friends' home without any difficulty. Plaintiff had driven over that railroad crossing many, many times, and was familiar with its location and condition. Upon arrival at their friends' home, they saw no light, so, without stopping, they turned around and drove back north toward the railroad crossing in order to recross it and go back out to the highway. It was a dark night without fog, but there was frost enough on the ground to leave car tracks. When plaintiff was about even with the south gate, or 200 feet from the tracks, and traveling at about 10 miles an hour, he looked west and saw the headlights of defendant's locomotive in open country approaching the crossing about a mile or $1\frac{1}{4}$ miles away. He then went up on the crossing while driving in about the middle of the road. Plaintiff testified that the train was then about one-half or three-fourths of a mile, or even a mile, away.

Plaintiff testified that as he drove over the south rail, one front wheel of his car, which one he didn't know, dropped "way down deep" in a hole which he never otherwise defined. There his motor died and plaintiff told his wife to get out and go back of the car. She then got out of the right side of the car and plaintiff shut the car door. When she got out, the train was still three-quarters of a mile away. Thus it will be noted that with full notice and knowledge of the obvious approaching danger she had ample time and opportunity to escape to a place of safety by the exercise of ordinary care, but she did not do so. After she got out, plaintiff looked again and saw the train about one-half mile away, so he started his motor twice and tried to go forward and then backward, but each time the motor died. He then turned off the ignition, took the key in his hand, looked up again and saw the train quite close, but he felt "it was far enough to get out of the way," so he opened the car door but couldn't get out of the way in time to avoid the accident, when the locomotive

hit the front end of his car and swung it around, where-upon the back end hit him and threw him into the train, from which he suffered serious injuries.

Plaintiff testified that when he looked up the last time he "saw the headlight of the locomotive and the locomotive itself of the train bearing down * * * just almost immediately before the accident happened"; that he "didn't know it was that close or I would have got out sooner." He heard no whistle or bell prior to the accident, but it is elementary that whether or not there was a whistle blown or bell rung was of no importance or consequence since both the plaintiff and his wife saw or could have seen the train at all times approaching in plain sight for at least one and a quarter miles, and knew of its approaching danger at all times. See Neusbaum v. Chicago & N. W. Ry. Co., 162 Neb. 754, 77 N. W. 2d 299. Thus, it will be noted that with full notice and knowledge of the danger approaching, plaintiff also had ample time and opportunity to escape to a place of safety by the exercise of ordinary care, but he did not do so.

The train was an extra freight traveling east at about 50 miles an hour, which makes applicable the rule that: "Beyond the limits of cities, villages, and towns no rate of speed of a train is generally in itself unlawful or evidence of negligence." Kennedy v. Chicago, R. I. & P. R. R. Co., 156 Neb. 345, 56 N. W. 2d 446.

The train was about four-fifths of a mile long and contained 74 loaded cars and 12 empties. Its engine was equipped with an electric headlight which would light the ground about 1,000 feet ahead and also project a light for about one-quarter of a mile in such manner that at that distance you might see a signal box or telephone pole. There was no evidence that plaintiff's car headlights were even lighted, much less that they were visible to the engineer. Also, there is no evidence that the engineer failed to keep a proper lookout or slacken his speed or that he could have done so in time to have

stopped the train and avoided the accident.

As a matter of fact, after the accident the train did stop with its rear car 10 or 12 car lengths, or about a block or more, east of the crossing. Right after the accident, plaintiff's car was lying on its top, 6 or 7 feet south of the south rail of the crossing, and 16 or 18 feet east thereof. When the highway patrolman arrived a short time after the accident, which occurred at 2:46 a. m., plaintiff's car was about 9 feet from the south rail, with its front end about 16 feet from the traveled portion of the crossing, and its back end about 25 feet therefrom. However, it had then been moved by rolling it over toward the southeast and upon its right side by part of the train crew and passengers, in order to remove the dead body of plaintiff's wife which was lying partially under plaintiff's car. Where she had gone or remained after leaving plaintiff's car, when she knew that the train was approaching three-quarters of a mile away, during which time she had ample time and opportunity to have escaped to a place of safety before the collision, is not shown by any evidence. The only inference or conclusion that can be drawn from the evidence is that she was in a place of known danger with ample time and opportunity to have avoided it by the exercise of ordinary care, but failed to do so, and was thus guilty of contributory negligence, as was plaintiff himself, and that such negligence was respectively more than slight as a matter of law when compared with any negligence of defendants, which barred plaintiff's right of recovery.

When the ambulance arrived shortly after the accident, it drove across the railroad crossing satisfactorily, then turned around and drove back across it again without any difficulty. The highway patrolman who inspected the accident drove over the crossing from both directions without any difficulty. His examination of the crossing disclosed that it was rough and bumpy when he hit the rails, but there were no places or holes on it deeper

than 3 inches from the top of the rail. The sheriff's examination disclosed no deep holes on the crossing. Plaintiff's friends who lived nearby used the crossing almost daily, and even drove over it and back again on May 10, 1952, without difficulty, but they noticed that it was rough, with a fall-away at the rails about as deep as the rails. Plaintiff's brother, who owned adjacent land and used the crossing regularly, testified that the fall-away from the rails was 6 or 8 inches, or maybe as much as 10 inches. In that connection, however, photographs of the crossing and rails, taken from different directions right after the accident, together with enlargements of some of them, appear in the record. Contrary to plaintiff's contention, they do not disclose any deep pits or holes on the crossing, but only verify the testimony of the patrolman and sheriff heretofore recited. Consequently, the condition of the crossing itself could not be reasonably said to have caused plaintiff's car to stall thereon. To hold otherwise would be entirely speculative.

We find no competent evidence from which it could be reasonably concluded that defendant engineer was negligent in the operation of the train, which could make the doctrine of respondeat superior applicable. Thus, we are required to determine whether or not there was any competent evidence that defendant railroad company was negligent in any manner, which proximately caused the accident and injuries to plaintiff and the death of his wife. In that connection, we may assume for purposes of argument only that defendant railroad company failed to properly maintain and repair the crossing, yet conclude that the contributory negligence of plaintiff himself and his wife barred any recovery as a matter of law. The crossing itself was no more than a condition and not a cause of the accident and death.

Further, contrary to plaintiff's contention, and in the light of the foregoing evidence, plaintiff and his wife were not entitled to the benefit of the emergency rule,

nor to the doctrine of last clear chance, nor to the rule that they exposed themselves to danger in a reasonable effort to save a third person or his chattels from harm, nor to the rule that the instinct of self-preservation and disposition of men to avoid personal harm may, in the absence of evidence, raise the presumption that a person killed or injured was in the exercise of ordinary care. The following authorities respectively so dispose of plaintiff's contention: Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491; Carter v. Zdan, 151 Neb. 185, 36 N. W. 2d 781; Wolfinger v. Shaw, 138 Neb. 229, 292 N. W. 731; Peake v Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.